JOHN A. DOMINICK, plaintiff in error *vs.* B. C. BOWDOIN, jailor, defendant in error.

1. The Governor of this State granted an unconditional pardon to a party, who was afterwards arrested by the sheriff upon a bench warrant for the same offense pardoned by the Governor, and petitioned the Court for the writ of *habeas corpus*, and upon the hearing thereof, the Court refused to receive the pardon as evidence in favor of the applicant.

*Held*, That this was manifest error by the Court. It is the duty of all Courts, sitting for purposes of *habeas corpus*, or otherwise, to receive, without further evidence of its verity, the pardon of the Governor under the Great Seal of the State.

2. *Held, again,* That under the Constitution of 1868, which differs from the previous Constitutions of this State, in the grant of the power of pardon to the Executive, and contains only the same limitation upon the power that limits the Royal prerogative in Great Britain, by Act of William the Third, which is incorporated into the Constitution of the United States; and by the Courts in Great Britain, and of the Supreme Court of the United States, has been held, to authorize the exercise of the pardoning power *before* as well as *after* conviction, it was error in the Court to reject this pardon upon that ground.

3. *Held, again,* That pardons obtained by fraud are void, and upon suggestion of fraud upon the trial of *habeas corpus*, it was the duty of the Judge presiding to have heard the evidence, and passed upon its merits, as to the facts in the particular case, and it was error in the Court to hold that this question could only be enquired of by the jury.

*Habeas Corpus.* Pardons. Before Judge GREEN. Chambers. Spalding county, March, 1871.

Dominick was indicted in 1869, for murdering one Pilkinton, in said county, in 1868. A bench-warrant was placed in the sheriff's hands; he arrested Dominick on the 19th of February, 1871, and had him duly committed to jail. Dominick had *habeas corpus* issued to release him from imprisonment. The sheriff relied upon his arrest and detention on said bench warrant. Dominick replied, by producing and offering as evidence, a pardon by the Governor of this State, (R. B. Bullock,) dated the 20th of October, 1870. It recited, as reasons for the pardon, that said

indictment was pending against Dominick, that he, the Governor, had a petition, numerously signed by citizens of Pike county, asking a discontinuance of said case, and Dominick's pardon, because he killed Pilkinton under the great provocation of Pilkinton's brutally and violently beating Dominick's mother; that Dominick was a man of good character, and his family absolutely needed his assistance; that the case, though so old, had never undergone judicial investigation, and "Hon. Thomas J. Speer, Senator of the Twenty-second Senatorial District, embracing Pike county, united in said petition." It "pardoned Dominick of the crime alleged against him in said bill of indictment, and every other charge of like nature, arising out of the same facts, or based upon the same transaction." It was duly authenticated. Counsel for the sheriff objected to this pardon being used as evidence, saying that it was procured by fraud, and that that issue of fact should be submitted to a jury, and could not be decided by the Judge. This objection was sustained; the pardon was ruled out, and the Judge remanded Dominick to jail. This is assigned as error.

D. J. BAILEY; HUGH BUCHANON, for plaintiff in error. As to pardoning power: Constitution of 1868, Art. 4, p. 5158; Art. 3, p. 4950. Pardon may antedate conviction: Cons. U. S., Art. 2, sec. 2, p. 5032, and Constitution of 1868, cited *ante*: 4 Wall. R., 334. Pardon binds Courts: 7 Peters, U. S. S. C. R., 150; 2 Bl. Com., 402; Ch. 1 Cr. L., 772; 4 Bl. Com., 401. It needs but to be produced: 3 Bouv. Ins., 447.

L. B. ANDERSON, Solicitor General; DOYAL & NUNNALLY; PEEPLES & STEWART, for defendant. *Habeas corpus* cannot discharge from bench warrant: R. Code, sec. 3947. Fraud in procuring it makes pardon void: 1 Bish. Cr. L. 754, 755; 8 Wright's Penn. R., 210, 219; 7 Bacon's Abr., 410. Conditional pardons: 2 Story on Con., sec. 1504 and

Dominick vs. Bowdoin.

note; 18 How., 307; 1 Kent's Com., 306; 7 Peters, 150; 1 Bailey's R., 283; 8 Watts & S., 197; 1 Bish. Cr. L., sec. 711.

LOCHRANE, Chief Justice.

At the April Term, 1869, of the Superior Court of the county of Pike, John A. Dominick, the plaintiff in error, was indicted for murder. In October, 1870, the Governor of this State granted and caused to be delivered to him an unconditional pardon. Subsequently to this pardon he was arrested by the sheriff upon a bench-warrant issued from Pike Superior Court, upon the indictment for murder, and taken before some judicial officers in Pike county, who ordered him to be lodged in the common jail of the county of Spalding for safe keeping.

During his confinement in jail he applied for the State's writ of *habeas corpus*, which was granted, and, upon the hearing, the jailer assigned for cause of his detention and imprisonment the proceedings stated, and that he presented the pardon of the Governor after he was in jail, etc.

The Judge, sitting as a Court of *habeas corpus*, refused to receive the evidence of the pardon, and remitted the prisoner to jail, and this judgment of the Court below is the error assigned.

1. The important question to be decided in this case is the power of the Governor, under the Constitution of 1868, to grant pardons before conviction. The language of the Constitution of 1868 is in these words: " He shall have power to grant reprieves and pardons, to commute penalties, and to remit any part of a sentence for offenses against the State except in cases of impeachment."

The power conferred under this Constitution differs from that conferred by our previous Constitutions. In the Constitution of 1798, the language was : " He shall have power to grant reprieves for offenses against the State, except in cases of impeachment, and to grant pardons, or to remit any

part of a sentence *in all cases, after conviction,* except for treason or murder, in which cases he may respite the execution, and make report thereof to the next General Assembly, by whom a pardon may be granted."

From the 23d May, 1798, down to the Constitution of 1868, the power of the Governor was limited by the Constitution as to the nature of the offenses to be pardoned, and also to the time, or " *after. conviction."* By reference to our present Constitution, it will be seen these checks and limitations have been removed. His power to pardon is limited only in cases of impeachment, and the Constitution is silent as to the time when the power may be exercised.

The language of our present Constitution is similar to that used in the Constitution of the United States. Enumerating the president's powers, it says: "He shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment." It will be seen that the Constitution of the United States is also silent as to the time when the power may be exercised by the president. The power of pardoning may be traced among the earliest writers, as the prerogative of the sovereign authority, and no matter what reasons it may be founded upon, its existence has been recognized. The limitations in cases of impeachment, found in the United States Constitution, and the Constitution of 1868, may be found in Stat. 12 and 13, W. III., C., 2, which contains these words: "That no pardon under the great seal should be pleaded in bar to an impeachment by the House of Commons." And this Act was, itself, founded upon the altercations which finally terminated in the dissolution of Parliament, arising out of the impeachment of the Earl of Danby, in 1678, before the Commons, and who presented as his plea in bar of such impeachment, the pardon of the King. The prerogatives of the Crown, and the legislative privileges of the Parliament of Great Britain, were practically settled by the revolution of 1688, but the subject has again and again been subjected to grave and learned dis-

Dominick *vs.* Bowdoin.

cussions, and the rights and privileges of Parliament may be, perhaps, now conceded to be beyond the control of judicial tribunals. And the last speech of the celebrated Sir William Wyndham, was delivered in the House of Commons upon this very subject. But whatever claims of limitation against the power of pardon, in cases of impeachment, may have existed, the right as to *offenses* against the *Crown*, was yielded, as the unquestioned prerogative of the sovereign. And from the nation whence we have derived the great body of our laws, and fundamental principles of free government, we have also acquired the judicial exposition of the laws themselves, as precedents, worthy, in my judgment, to be accepted as the very soundest promulgation of what the law originally intended to announce. For myself, I entertain the very highest estimate of the learning and purity of the Judges who adorn the Bench of Great Britain, and upon a subject when, under the same *laws* copied from British statutes into our legislative system, I find the construction of their Courts, I yield to them a deference and consideration based upon my appreciation of their intrinsic value.

In the case at bar, the English Courts have held, in the language of Lord Coke: "A pardon is a work of mercy, whereby the King, *either before attainder, sentence or conviction, or after,* forgiveth any crime, offense, punishment, right, title debt, or duty," etc. The power of pardon exists either *before* or *after* conviction. This is the doctrine of the British authorities, and the power to pardon, as a royal prerogative, limited in cases of impeachment by act of William III., may be found as the power granted in the United States Constitution, in express words, with the same limitation. And the Supreme Court of the United States has given to it the same construction. In 18 Howard, 307, the reason for such construction is, that the words used in the Constitution of the United States conveyed to the mind the authority as exercised by the English Crown, etc. And in 4 Wallace, the construction given to the words used in the Constitution were

similar to that given in Great Britain, and the power may be exercised *before* or *after* conviction.   To give a different construction to the words used in our State Constitution would be to overrule the authority of the Courts of Great Britain, and that of the Supreme Court of the United States.   For no reason exists, or can be said to exist, which would authorize a different construction, as to the power of the Governor of a State from that of a *President* or *King*, over the matters expressly delegated to him by the Constitution of the State. Indeed, our formal adoption of the common law makes it more applicable to our condition than it does to the President.

It is true that these decisions are not legally binding on us, and that, if we differed with the principles upon which they are based, we are free to set up our own opinions.   This is clear, and out of this agreement upon principle, it may be urged, with great plausibility, that the terms used must mean, that pardons shall be limited to cases *after conviction*, or, in view of the language used, " he shall have power to grant *reprieves* and pardons, to commute penalties, and to remit any part of a sentence for offenses against the State, except in cases of impeachment;" that the word *sentence* qualifies the preceding provisions granting the power, or that the words " for offenses " against the State mean such offenses as are ascertained by trial, under the forms of law.   If the meaning of the words used necessarily involve the requisition of a trial to establish the *fact* of the offense, before the power to pardon becomes vested in the executive, then the same necessity is implied under the very same language used in the Constitution of the United States ; for the language there is, " he shall have power to grant reprieves and 'pardons for offenses against the United States, except in cases of impeachment."   And the opinions of the Attorney Generals, and the decision of the United States Courts have not held the words " for offenses " to mean any such thing.   But, again, it may be said that the words " for offenses," if it does

Dominick *vs.* Bowdoin.

not mean those found guilty of offenses against the State, violates a fundamental rule of law, that "all men are presumed innocent until found guilty," and *offenses* cannot, in law, exist, until established by proof, by the verdict of a jury. This cannot have sufficient weight to set aside the opinions of such men as Lord Coke, or of the Supreme Bench of the United States, because no man need be tried if he does not want to. *He may plead guilty.* No power can compel him to go through a *trial* at all if he does not desire to plead *not guilty*, and the petition for pardon, or acceptance of it, is a *confession* of the imputed offense; the pardon granted is accepted upon the principle of its *confession.* This point, made upon this power, has undergone judicial decision and been the subject matter of discussion frequently, and decided as I have stated.

In 7 Peters, United States vs. Wilson, Chief Justice Marshall, a name that adds to a judicial opinion the weight of the highest judicial integrity and the most profound learning, treats a pardon as a *plea in bar;* and, as stated by Blackstone, 4th volume, 339, *it must be pleaded.* If pleaded then it is to prevent the very thing the construction contended for insists it cannot prevent, to-wit: a conviction. This construction would upturn the plainest written principles covering the law of pardons.

If we were to set up the individual reasons which might control us, as a new question, under our division of powers of the government, much more could be said against the interference with the executive, with the due course and administration of the laws, *after* than *before* conviction. In England, by a fiction, the King is the source of judicial power. He is the chief of all the Courts of law, and the Judges are only his substitutes; and, in criminal cases, as he is regarded the universal proprietor of the kingdom, he is deemed directly concerned in all prosecutions carried on in his name. And here the *State* is represented in Courts of law, not by the individual principle of executive authority,

but by the laws of the land. Much stronger reasons might therefore be given in favor of a *pardon before* than after Courts had convicted and sentenced the prisoner; that is, if we, for the time, concede that this power is not expressly granted by the people, the source of all power, and is a question of prerogative. But we confine ourselves to the precedents and decisions above stated, and, guided by them, we are of opinion the pardoning power of the Governor of this State is equal to the same power conferred by the Constitution of the United States upon the President, and subject to no other or greater restriction. And the decisions of the English Courts and American Courts upon this subject are uniform and conclusive. And we affirm the principles of construction therein enunciated in the language of the very able and distinguished Judge who presides over the Courts of the United States in this State, delivered by him in his judgment, protecting the property of the citizen from confiscation, upon the pardon granted to the claimant by the President, Mr. Johnson: "Although laws are not framed on principles of compassion for guilt; yet, when Mercy, in her divine tenderness, bestows on the transgressor the boon of forgiveness, Justice will pause, and, forgetting the offense, bid the pardoned man go in peace."

Holding, as we do, the *pardon* to be properly within the constitutional power of the Executive of this State to issue, when the petitioner presented his pardon under the Great Seal of this State, reciting the offense and the party, and unconditionally pardoning him therefor, it was the duty of the Court to have received it in evidence upon the hearing of the *habeas corpus*, and to have respected it as the act of the chief magistrate of this Commonwealth. And the bench warrant and orders of the Justices of the Peace ought to have been set aside, and the party discharged. This was the clear duty of the Judge. In cases of pardon, there no longer exists, in contemplation of law, any offense for the party pardoned to answer; it is blotted out, and ceases to be a cause

to deprive him of his liberty.    And, in any form, his right to present his pardon is unquestionable, and the duty of all Courts to respect it is not a matter for disputation, where there is nothing set up to render it invalid.

When, by suggestion of fraud in its procurement, the question of its validity is put in issue, or where the identity of the person pardoned, or the fact of its acceptance or delivery, are brought before the Court, in such case, if, upon *habeas corpus,* it is the duty of the Court to hear the testimony and pass upon the merits of the particular case, or, if pleaded upon the trial, then to hear evidence, and let the jury pass upon the case under the proof.    For, while we hold the constitutional power exists in the Executive to grant pardons, we also hold that fraud in their procurement will render them void.    In the case of the Commonwealth *vs.* Ahl, 43 Pennsylvania State Reports, (7 Wright,) 210, it is declared " A pardon procured by *false and forged representations* and papers is void."

When, on the trial, it appears that prisoner had nothing to do with the fraud, still it is void.    *Ibid.*    The Act of 1819, in this State, required, in all cases of application for pardon, a certified copy of the evidence should accompany the application, and the principle of the *Act* was to prevent imposition on the Executive.    The rule was a good rule, and, while not applicable to this case, gives the spirit of the law, that the Executive should have the case before him to decide.

In the State *vs.* McIntyre, 1 Jones' Law Notes, 61 : " When a pardon is pleaded, and it appears from the pardon and the record that the Governor was misinformed, the pardon was held void."

We need not multiply cases, as enough has been quoted to show the fact that fraud will render the pardon void.    We find no settled rule of practice or law laid down, nor do we intend to lay down more than the recognition of the general rule stated.    As to what would or would not amount to *fraud,* or sufficient fraud to render it void, we deduce from

the general rules of decisions, that misrepresentation of the facts material in the case upon which the Governor acted, and which ought to have prevented the clemency of the Governor, if known, or any concealment of the material facts of the case, or suggestion of false views to the Governor to procure the pardon, ought to be adjudged in the particular case by the Court or jury, as the issue may be joined.

In the case at bar, the Court ought to have taken the pardon offered as evidence without further proof. Its verity needs no other evidence than the usual issue under the Great Seal of the State. And he should have discharged the prisoner under it, except an issue of fraud was suggested. And if such suggestion were made it was his duty then and there, without a jury, but, upon the hearing upon *habeas corpus,* to have heard the evidence and decided the case upon its merits. If there was no fraud proved sufficient to render the pardon void it was his duty to discharge the prisoner. If there *was enough proven,* he ought to have remanded him ; and under the facts in this case, from what appears in the certificate of the Judge, we reverse his judgment, but further direct him to receive the evidence of pardon granted, and if fraud is suggested in the proper mode, to cause an issue to be made, and thereupon hear the testimony offered and adjudge the case.

McCay, Judge, concurring.

I am not prepared now to decide the question made upon the argument in this case as to the power of the Governor, under the Constitution of 1868, to pardon before final conviction. The point was not made or decided by the Judge whose decision is excepted to, and I think it unnecessary for the decision of the question made in the record to decide it here. The Judge refused to notice the pardon at all, even to look to it, to inquire officially whether it was granted before or after conviction, but for the single reason that, under section 3947 of the Code, if the petitioner was shown to be

held under a bench-warrant, he should not be discharged. I think the Judge has given too rigid a construction to that section of the Code. Suppose the prisoner, in this case, had been prepared to show that he had been tried and found not guilty of the very offense for which the bench-warrant issued, would the Court hold that this could not be set up as a reason for discharge? All this section of the Code means, as I think, is, that, if the prisoner is in custody under a regular bench-warrant, the Court will not go behind it. But if it can be made to appear that the bench-warrant has become *functus officio*, that the bill has been *nol prossed*, quashed, or the party found not guilty, or he proven to be out on bail, if any good reason be shown that the bench-warrant has ceased to be a legal warrant for his custody, he ought to be discharged from arrest under it. My own judgment is, that the Judge, in a *habeas corpus* case, may hear and adjudge any question of fact necessary to a legal solution of the questions presented in the case. If this pardon is a fraud he can hear, and, for the purposes of this writ, determine it.

I concur in the judgment overruling the Judge, on the ground that he ought to have received the evidence. As to its effect, and whether it was or was not a lawful pardon, that could not be determined until it was presented before the Court.

WARNER, Judge, dissenting, (after stating that the majority of the Court were not ready to deliver the opinion in *Hancock's* case.)

The two cases of Dominick *vs.* Bowdoin, jailer, and R. B Bullock, Governor, *vs.* Hancock *et al.*, having been argued before the Court at the present term, and as both cases involve the question of the power of the Governor to grant a pardon before trial and conviction, will be considered together. In the case of Dominick *vs.* Bowdoin, it appears that Dominick was confined in jail under a bench-warrant issued

by the Judge of the Superior Court, the grand jury having found a true bill against him for murder. A *habeas corpus* was granted by the Judge, directed to Bowdoin, the jailer, requiring him to bring the body of Dominick before him, together with the cause of his capture and detention. The counsel for Dominick produced before the Judge a written document which purported to be a pardon granted by the Governor for the offense with which he stood charged by the grand jury, and moved the Court to discharge him, which motion the Court overruled, and remanded him back into the custody of the jailor; whereupon the prisoner, by his counsel, excepted. In the case of R. B. Bullock, Governor, *vs.* Hancock, a *scire facias* was pending in Court to forfeit the recognizance of Hancock, (who had been indicted for the offense of an assault with intent to murder,) and his securities. The defendants pleaded, in discharge of their liability, a written document purporting to be a pardon by the Governor, pardoning Hancock, the principal in the bond, for the offense with which he stood charged. The Court overruled the plea of pardon, whereupon the defendants excepted. In the case of Dominick, it is recited in the document claimed to be a pardon, that it had been represented to the Governor, by a petition, that the homicide had been committed in consequence of the great provocation rendered by the deceased, in most brutally and violently beating the mother of the accused, and that his family is in absolute need of his assistance and support, that the homicide was committed nearly two years ago, and the case had never undergone a judicial investigation, and that the Hon. Thomas J. Speer, Senator of the Twenty-sixth Senatorial District, embracing the county of Pike, had united in the prayer for the pardon of Dominick, etc. Whether the foregoing alleged recited facts were made to appear to the Governor on the oath of competent witnesses, or otherwise, does not appear, but the evidence must have been satisfactory to the Governor, whatever its character may have been; for he granted a pardon relieving and discharging

him from the crime alleged in the indictment, and every other charge of like nature arising out of the same fact or based on the same transaction. In the case of Hancock, the written document, offered as a pardon recites, amongst other things, that the pardon was not granted for the purpose of shielding him (the offender) from the hands of justice, but merely for the sake of those who have become sureties on his bond, in order to prevent damage and injury being done to them. It appears in the record that there were fourteen securities on the bond, which was for the sum of four hundred dollars. This is the first time the interpretation of the Constitution of 1868, in relation to the exercise of the pardoning power by the Governor has been presented to this Court for its consideration and judgment, and it should be so interpreted and construed as to maintain and preserve *intact* every clause and section of that instrument, defining the power of the Executive Department according to the true intent and meaning thereof. The question in these cases is, not what was the power of the Crown in England, or of the President, under the Constitution of the United, States to grant pardons for offenses before trial and conviction, but *the* question is, whether the Governor has the power to grant a pardon for offenses against the State, before trial and conviction, under the provisions of the Constitution of the State of Georgia.

By the 2d section of the IVth Article of the Constitution of 1868, the Governor has the power conferred on him " to grant reprieves and pardons, to commute penalties, and to remit any part of a sentence for *offenses against the State,* except in cases of impeachment." The Governor, under the Constitution, has the power to grant pardons " for offenses against the State." What is an offense, in the legal sense of that word, as used in the Constitution? Bouvier defines the word " offense " to be " the doing what a *penal law* forbids to be done, or omitting to do what it commands; in this sense, it is synonymous with *crime.*" 2 Bouvier's Law Dictionary, 242. The Constitution does not confer the power on

the Governor to pardon any person *charged* with an offense against the State. And the simple reason is, that every person so charged is presumed to be *innocent* thereof, until his guilt is proved and established, in the manner prescribed by law; and until that is done, there is no offense against the State to be pardoned by the Governor, of which he has any *legal cognizance* for that purpose. The Governor has no power or authority, under the Constitution, to *assume* in advance of a trial and conviction, that a person *charged* with an offense against the State is guilty of that offense, and, acting upon that *assumption*, proceed to pardon him therefor; for, if he is not guilty of the offense charged against him, he needs no pardon. The Executive Department of the government has no power or authority, under the Constitution, to hear evidence and decide upon the guilt or innocence of a person charged with an offense against the State, in advance of a trial therefor; the power and authority to do that is conferred by the Constitution on the Judicial Department of the government. The Executive and Judicial departments of the government are *distinct*, and the Executive Department cannot exercise any power which is properly attached to the Judicial Department. What is a pardon, in the sense which that word is used in the Constitution? "A pardon is an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual on whom it is bestowed from *the punishment* the law inflicts for a crime he has *committed:*" 2 Bouvier, 261. In Comyn's Digest, it is said, " So the King may pardon all offenses of which a man is attainted or *convicted:*" 7 Comyn's Digest, marginal page, 50, title Prerogative, letter D. A pardon, in the sense which that word is used in the Constitution, is to *exempt* the individual to whom it is granted from *the punishment* which the law inflicts for an offense against the State, which he has committed, and for which he has been duly *convicted according to law.* Until trial and conviction, for an *offense* against the State, in the manner prescribed by the Constitution and laws

thereof, there is *no punishment* which the law inflicts for that offense, to exempt the individual from by a pardon. To exempt the individual from the punishment of an offense against the State, inflicted by the law, by granting a pardon to him, he must first be *convicted* of that offense according to law; otherwise, the law does not inflict any punishment on him, which requires a pardon to exempt him from that punishment. The establishment of the guilt of the party charged with an offense against the State, according to law, is an indispensable prerequisite to the infliction of *the punishment* prescribed by law; and until that is done, no punishment can be inflicted on the party, and no pardon is required to exempt him from it. The presumption of the law is always in favor of innocence, until the contrary is legally established.

A party may be *charged,* under oath, with having committed an offense against the State, or he may be *accused* by the grand jury of an offense against the State; but such charge or accusation does not authorize any *punishment* to be inflicted for that offense until the party so charged or accused has first been tried and *convicted* therefor according to law. Until *trial* and *conviction* for an offense against the State, the Governor can have no *legal* evidence or *official* knowledge that an offense against the State has been committed which will authorize him to grant a pardon therefor under the Constitution. The power conferred by the Constitution is to grant pardons *for offenses against the State,* not for offenses *charged* to have been committed against the State. Is it competent for the Governor to hear evidence and pass upon the guilt or innocence of a party *charged* with an offense against the State, and to pardon him for that offense in advance of any trial therefor, as provided by the Constitution and laws of the State? If it is competent for the Governor to do so, then all offenses against the State may be *summarily* disposed of by the Executive Department of the government without invoking the aid or assistance of the Judicial Department thereof. But, inasmuch as the Executive Depart-

ment of the government has no jurisdiction, power or authority under the Constitution to hear and determine as to the guilt or innocence of any person *charged* with an offense against the State, it necessarily follows that that question must be decided by the Judicial Department of the government where the jurisdiction and power to decide it is vested by the Constitution, and until it has been so decided the Executive Department has no power or authority to interfere with the jurisdiction of the Judicial Department in regard to *that question.* When the party *charged* with an offense against the State shall have been found guilty of that offense by the Judicial Department of the government, and the sentence of the law shall be inflicted on him for that offense, then the Governor has the unquestioned power, under the Constitution, to grant a pardon to the offender, and relieve him from the punishment inflicted by the law for that offense against the State. If the words "after conviction" had been inserted in the Constitution of 1868 it would have been mere *surplusage*, for there could not have been any *offense against the State* to be pardoned, in the legal sense of that word as used in the Constitution, until the party charged therewith had first been tried and *convicted* of that offense, in accordance with the laws thereof. An offense against the State must first be established before the Governor can grant a pardon for that offense under the Constitution, and that offense against the State can only be established by trial and *conviction* therefor, as provided by law. Before there can be a pardon legally granted by the Governor to any person for an offense against the State, under the Constitution, it must first be shown that an offense against the State has been committed by such person, and the only *legal evidence* of that fact is the trial and *conviction* of the person charged therewith, as required by the laws of the land. It cannot properly be said that any person is guilty of an *offense* against the State until that person has been *legally tried and convicted therefor.* Until there has been a legal trial and con-

Dominick *vs.* Bowdoin.

viction of a person charged with an offense against the State, in the proper Court having jurisdiction thereof, the Governor, under the Constitution, has no power to grant a pardon for that offense, and no pardon is necessary to exempt such person from punishment for that offense before trial and *conviction* therefor. There must be an offense against the State *legally established* before that offense can be pardoned by the Governor, as contemplated by the Constitution. Before the pardoning power conferred by the Constitution can be legally exercised by the Governor there must necessarily be *an offense against the State,* legally established, *to be pardoned.* The plain language of the Constitution is, that the Governor " shall have power to grant pardons for *offenses against the State."* If there is no offense against the State, established by the trial and *conviction* of the party charged therewith in the manner prescribed by law, then there is no offense against the State to which the pardoning power, as contemplated by the Constitution, can be made applicable.

But it is said that the clause in the Constitution of 1868, relative to the power of the Governor to grant pardons for offenses against the State, is similar to that in the Constitution of the United States, and that the Supreme Court of the United States has decided that the President, under that Constitution, may grant a pardon for offenses against the United States before conviction. That may be conceded, and still the Governor, under the Constitution of this State, would not have the legal power and authority to do so. The Constitution of this State contains a provision in it that is not in the Constitution of the United States. The 31st section of the 1st Article of the Constitution of this State declares, " That the Legislative, Executive and Judicial Departments shall be distinct, and each department shall be confided to a separate body of magistracy. No person, or collection of persons, being of one department, shall exercise any power properly attached to either of the others, except in cases herein expressly provided." This section of the Constitution

was intended to *restrain*, and *does restrain*, the Executive Department of the State Government from all interference with the powers, duties and functions of the Judicial Department in the due administration of the laws of the State, which is vested by the Constitution in the latter department. When the Judicial Department of the State Government shall have tried and convicted a person charged or accused of an offense against the State, in accordance with the laws thereof, then, that department has performed its appropriate functions, and the Governor may then exercise the pardoning power vested in him by the Constitution. But to interfere with the due administration of the laws of the State by the Judicial Department thereof, before trial and conviction, by granting a pardon for the offense with which the defendant stands charged in the Courts of the State, or before he is so charged, and thereby prevent and defeat the due administration of the law by the Courts, would be to exercise a power properly attached to the Judicial Department, which the Constitution expressly forbids. To hear evidence and determine whether an offense has been committed against the State, belongs *exclusively* to the Judicial Department of the State Government. Whenever the Executive Department assumes to decide that any person has been guilty of an offense against the State, before trial and conviction therefor, as provided by law, and then proceeds to grant a pardon to such person for that offense, it is an *usurpation* of authority not conferred on the Executive Department by the Constitution, but expressly denied thereby. The Governor has the power, under the Constitution, to grant a pardon for an offense against the State, when the fact has been made known to him by competent legal evidence that such an offense has been committed, by the trial and conviction of the offender before the proper tribunal ; but there is no express power conferred on *him* to hear evidence and determine that an offense against the State has been committed, so as to lay the foundation for a pardon for that offense.

Dominick *vs.* Bowdoin.

The ascertainment of the fact whether an offense against the State has been committed, properly belongs to the Judicial Department of the government, under the Constitution, and not to the Executive Department; and whenever the Governor assumes or undertakes to decide that an offense against the State has been committed for the purpose of granting a pardon therefor, he assumes and undertakes to exercise a power which the Constitution of the State prohibits; for no person, or collection of persons, being of one department, shall exercise any power properly attached to either of the others, except in cases therein *expressly* provided. It cannot be denied that the power to hear evidence and ascertain the guilt of persons charged with having committed offenses against the State is a power properly attached to the Judicial Department of the State government; and, that being so, the Executive Department has no power or authority to interfere with it by granting a pardon before a trial and conviction therefor, so as to defeat the exercise of that power by the Judicial Department, but, on the contrary, is expressly prohibited from doing so by the Constitution. Whatever may have been the power claimed for the King in England, or for the President, under the Constitution of the United States, to pardon for offenses before trial and conviction, the Constitution of this State studiously keeps the powers of the Executive and Judicial Departments of the government separate and distinct, and the pardoning power of the Governor cannot be exercised until there has been a trial and conviction for an offense against the State by the Judicial Department, as provided by the Constitution and the laws thereof. To hold otherwise would be to decide that the Executive Department of the State government had the power and authority to hear and determine the question of the guilt of persons *charged* with offenses against the State, and pardon them therefor without any other or further trial, and thus *usurp* the functions of the Judicial Department of the government, which the Constitution of this State expressly for-

bids. Construing that section of the Constitution which confers the power on the Governor to grant pardons for offenses against the State, in connection with the 31st section of the 1st Article thereof, it is quite clear to my mind that it never was intended that the Governor should exercise the pardoning power before trial and conviction by the Judicial Department of the Government. As has been already shown, there must be an offense against the State to be pardoned, and, under our Constitution, that fact cannot be legally ascertained, except by a trial according to law by the Judicial Department of the government, and whenever the Executive undertakes to assume, or hear evidence as to the fact that an offense against the State has been committed before trial and conviction, it is an *invasion* of the functions of the Judicial Department, which alone can furnish the only legal and competent evidence of that fact under our Constitution. This, in my judgment, is a fair and proper construction of the Constitution of this State so as to prevent the *abuse* of the pardoning power by the Governor, to the great detriment of public justice. I am, therefore, of the opinion that the judgment of the Court below, in both cases, should be affirmed, on the ground that the Governor, under the Constitution of this State, had no power to grant a pardon for either of the offenses charged before a trial and conviction therefor in the Courts of the State, as provided by that Constitution and the laws in pursuance thereof.