Okey, J.
Knapp, by reason of his conviction, became a felon, and was adjudged to undergo servitude and submit to discipline of the most onerous character, within the four walls of a prison, and that for life. At common law his testimony could not have been received in any cause, in any state; and not only was he “ incompetent to be an elector or a juror, or *381 to hold any office of honor, trust or profit ” (Rev. Stats. § 6797), but he was deprived, for life, of all civil rights, and was indeed civilly dead. By force of the pardon, however, which was full and unconditional in terms, he was “ restored to all his civil rights and privileges.” Id. For “ a pardon reaches both the punishment prescribed for the offense and the guilt of the offender.” Keep. Garland, 4 Wall. 333, 380. “It obliterates,in legal contemplation, the offense itself.” Carlisle v. U. S., 16 Wall. 147, 151. “In contemplation of law it so far blots out the offense, that afterwards it cannot be imputed to him to prevent the assertion of liis' legal rights. It gives him a new credit and capacity, and rehabilitates him to that extent in his former position” (Knote v. United States, 95 U. S. 149), and hence its effect “ is to make the offender a new man.” 4 Bl. Com. 402. And see U. S. v. McKee, 4 Dillon, 28; Cuddington v. Wilkins, Hobart (1 Am. ed.) 204; 8 Am. L. Reg. N. S.; 513, 577; cf. 86 N. Y. 563. It is, in effect, a reversal of the judgment, a verdict of acquittal, and a judgment of discharge tkeveon, to this extent, that there is a complete estoppel o’f record against further punishment pursuant to such conviction. Though sometimes called an act of grace and mercy, a pardon, where properly granted, is also an act of justice, supported by a wise public policy.
But it is said that this full, unconditional pardon, by force of which Knapp was released from imprisonment, transformed from the condition of a convict to that of a freeman, and restored to his family, was revoked by the governor; and it is claimed, in the answer, that the warden of the penitentiary, by virtue of an order from the governor, purporting to revoke the pardon, and directing Knapp’s re-arrest, lawfully incarcerated him in the penitentiary on the original conviction, and that it was not even necessary that he should have a hearing of any sort. The authorities, however, without any conflict whatever, deny to the governor any such power, and hold the pardon, when delivered, to be irrevocable. No doubt the paper delivered to Warden Thomas was issued-by the governor in perfect good faith, but there is as little doubt that it was a mere nullity. State v. Nichols, 26 Ark. 74; Exp. Reno, 66 Mo. 266; Matter of De Puy, 3 Ben. 307, 316. As Leavitt, J., *382 said in United States v. Hughes, 1 Bond, 574, of the person whose case was then under consideration, we ma.y say of Knapp, that “ it is far better that he should escape punishment than that a plain principle of law should be set at naught.” Indeed, it would not only be contrary to principle that the governor should be invested with such authority, but the power itself would be of the most dangerous and pernicious character. Great evils would inevitably flow, in ways that may be readily suggested, from the exercise of any such power; and hence, wisely, no such power exists.
The proposition thus stated being undeniably true, how can it be claimed that the warden of the penitentiary, rising above the governor, has authority to treat the pardon as a nullity, by arresting Knapp and confining him in that prison on the original charge? With equal legal right the sheriff might have hung Knapp, if he had been convicted of murder in the first degree and pardoned. Will anybody be bold enough to say that, in such casé, the sheriff might'have defended against a prosecution for the homicide, upon the ground that Knapp had obtained his pardon by devices similar to those stated in this answer? Might a justice of the peace refuse to permit Knapp to sit as a juror, or the trustees of a township or ward refuse his vote, on the ground that his pardon had been obtained by such devices ? To state such propositions is to refute them ; and yet it is impossible to affirm, with any reason to support the claim, that there is greater legal right to offer impeaching evidence in one of these cases than in the others. Indeed, if such collateral attack is permitted, there is no reason why a convict in the penitentiary may not, on habeas corpus, impeach his conviction on the ground that it was obtained by fraud.
The fact is that in seizing Knapp and incarcerating him in the penitentiary, after he had been discharged therefrom on such pardon, the warden was a trespasser from the beginning, and it would be contrary to all principle to permit him to shelter himself behind the sentence, which had become as though it had never been pronounced. If the governor had no power to revoke the pardon, a fortiori the warden had no power to *383 disregard it, and lie could liave no greater protection from the expended sentence after he imprisoned Knapp than when he seized him. Habeas corpus is the appropriate and efficient remedy, and it is as potent to release from such imprisonment as from such arrest. This statement is made after a laborious examination of the whole subject, and I will now trace the steps by which that result was reached.
As already indicated, the claim of the warden is that it is the duty of this court, in this case, in the proper exercise of its powers, to declare the pardon to be void, on the ground that it was obtained, by the flpiud stated in the answer, and thereupon remand Knapp to the-penitentiary, in pursuance of the original sentence. This claim is based on the assumed fact that either (1) the statute of 27 Edward 3, st. 1, c. 2, is in force in this state, and confers the power; or (2) that such power may, by force of the common law, be esercised by this court. Is the claim well founded ?
By the constitution (art. 4, § 2) it is ordained that the supreme court “ shall have original jurisdiction in quo warranto, mandamus, habeas corpus and procedendo, and such appellate jurisdiction as may be provided by law.” The appellate jurisdiction may be large or small, as the legislature, in its wisdom, may determine; but the original jurisdiction cannot be lessened, nor can it be enlarged; the maxim, expressio unius est exclusio alterius, applies. Railroad Co. v. Hurd, 17 Ohio St. 144. This court’s jurisdiction may be properly illustrated in this case by reference to the law relating to the writ of scire facias, which is “ necessarily founded on some matter of record.” Foster on Sci. Fa. 2; 5 Wait’s Act. & Def, 641. The cases in which that writ is employed are divided into two classes. One class is where the writ is the commencement of an original action, as to repeal letters patent; charters, as a charter of pardon (Howard's Case, T. Raym. 13 ; 17 Vin. Ab. 32); and the like. In the other class scire facias is a judicial writ, to carry on a suit in which some other person lias acquired an interest, to revive a judgment, or for like purpose. In the latter sense, the jurisdiction is constantly exercised in this court by means of orders of revivor and the *384 like. In the former sense, this court has- no jurisdiction to grant the relief obtained through such writ, except by quo warranto, which writ does not extend to such a charter as a pardon. The jurisdiction invoked in Knapp’s case is in no sense appellate, but is original. It is the power of this court in habeas corpus, and that power is in no way aided by its jurisdiction in other matters ; nor is the power on habeas corpus in this court larger than in other courts of the state, or that possessed by a single judge. “ It is proper to say,” as stated by Swan, C. J., in Exp. Bushnell, 9 Ohio St. 77, 181, “ that the supreme court of the state in regular* session have no more judicial power or discretion, in determining questions which arise upon habeas corpus, than a probate judge of the county. Each must be governed by the same rules, and both are invested with the same powers — no more and no less.”
In Work v. The State, 2 Ohio St. 296, 302, Ranney, J., in referring to the writ of habeas corpus, took occasion to say: “ In what does the privilege of this great bulwark of personal liberty consist? The constitution furnishes no answer, nor was it necessary that it should. If ages of uninterrupted use can give significance to language, the right of jury trial and the habeas corpus stand as representatives of ideas as certain and definite .as any other in the whole range of legal learning.” But while this is undeniably true, and while it is also true that a matter of record coming before'the, court-, in such summary proceeding, cannot, independently of statute, be impeached collaterally as having been obtained by fraud ; yet the extent of the jurisdiction in habeas corpus, as well as the manner of its exercise, is undoubtedly, in some measure, within legislative control. The question is, therefore, not as to the jurisdiction in habeas corpus which might be conferred on this court, but what jurisdiction has, in fact, been conferred by the constitution and statutes. As already stated, the grant in the constitution is simply that this court shall have jurisdiction in habeas corpus. The statutory provisions, it will be seen (Rev. Stats. §§ 2726-2753), so far as they relate to cases like this, are the same as 31 Chas. II., c. 2 (1 Eng. Stats, at Large, rev. ed. 785; Hurd’s Hab. Cor. App. 1), which “ statute *385 has been re-enacted or adopted, if not in terms, yet in substance and effect, in all the United States” (2 Kent’s Com. 27; Hurd’s Hab. Cor. 2 ed. 128); and that statute conferred upon the court no power whatever to turn the summary proceeding by habeas corpus into a writ of scire facias, to impeach a charter on an allegation of fraud.
We come now to the statute 27 Ed. 3, St. 1, c. -2; 1 Stats, at Large (rev. ed.) 195, which provided, in substance, that every pardon should contain the names of the persons on whose application it was granted, and the representations made to procure it; and if a judge, before whom a pardon might be pleaded or relied on, found the representations to be untrue, he was required to disallow the pardon, and “ moreover do as the law demandetli.” The condition of things which led to this statute and others on the subject (as 2, 10 & 14, Ed. 3; 13 R. 2, c. 1 ; 4 II. 4, c. 2; 8 Am. L. Reg. N. S. 513, 577), is well known, and need not be here repeated. 1 Parl. His. 293; Crabb’s His. Eng. L. 279; 3 Hume’s His. 272. Besides the fact that the statute would have been inapplicable in a case like this, it is inconsistent with the principles of our present, as well as our former constitution in relation to pardons ; and aside from that, objection, it is not, in any view, in force in this State. Crawford v. Chapman, 17 Ohio, 449; Lindsley v. Coats, Roads v. Symmes, 1 Ohio, 243, 281; Sergeant v. Steinberger, Thompson v. Gibson, 2 Ohio, 305, 339; Fleming v. Donahue, 5 Ohio, 449; Helfenstine v. Garrard, 7 Ohio, 1 pt. 275; Chillicothe Bank v. Swayne, 8 Ohio, 257, 282; Winn v. State, 10 Ohio, 345; Vanvalkenburgh v. The State, 11 Ohio, 404; Stilley v. Folger, 14 Ohio, 610, 650; Carroll v. Olmsted, 16 Ohio, 251, 259; Urmsey v. Wooden, 1 Ohio St. 160; Kerwhacker v. Railroad Co., 3 Ohio St. 172, 177; Smith v. State, 12 Ohio St. 466; Drake v. Rogers, 13 Ohio St. 21. Possibly it was in force here during part of our territorial existence (1 Chase, 190, 512, 528), but if so, clearly since the state was formed, it has been as completely obsolete as the rule which formerly existed (2 Strange, 1203; 1 Ohitty’s Cr. L. 469), requiring a man charged with felony to plead his pardon kneeling, and pay four . *386 guineas to each of the judges. In Com. v. Halloway, 44 Pa. St. 210, the principal case relied on by the warden, it appeared that the stat. 27 Ed. 3, had been wholly disregarded, and properly, for it seems that it is not in force in Pennsylvania (3 Binney, 599, 611). Whether a single governor in the United States regards himself as bound by it is doubtful. But it is sufficient to say that, however it may be elsewhere (1 Bishop’s Cr. L. § 906, n. 6; Bishop’s Written L. § 255), the provisions of that statute are not in force in Ohio, nor have they been treated as in force here at any time.
It is urged, however, that the pardon may be impeached in this case for fraud, independently of English statutes. But there is no such common law principle, nor, if it existed, would it be applicable in Ohio. A charter of pardon has been sometimes likened to a deed, in this sense, that it is of no force until it is delivered and accepted, though see 7 Rob. Pr. 376; but no case can bo found which denies that it is matter of record ; and, in truth, it is matter of record of so high a nature that no averment can be taken against it. At common law, as we have seen, a pardon may be impeached for fraud by scire facias (T. Ray. 13; 17 Vin. Ab. 32; 44 Pa. St. 219; 1 El. & Bl. 310; 14 Wall. 434), and, as we have also seen, scire facias only lies to matter of record. “ A charter which has been obtained from the crown by fraud, may be repealed by scire facias ; but so long as it remains unrepealed, its validity cannot be disputed.” Herr on Fraud (1 Am. ed.) 354; Webb v. Moler, 8 Ohio, 548; Ang. & A. Corp. § 636. Scire facias may be maintained to repeal letters patent (4 Inst. 88), or a charter granting a franchise, as a fair, market, rectory, ferry, toll, or office. Foster on Sci. Fa. 229, 237; Plow. Com. 491; Forsyth’s Const. L. 387; 2 Taylor’s Ev. § 1371; Ang. & A. Corp. § 778. And see, for a brief but instructive history of the origin of charters, Holmes’ Com. L. 271; Bigelow’s His. Pro. 66, 316. A patent for land cannot be impeached for fraud in an action to recover the land, nor in any other collateral proceeding; and this is upon the ground that it is issued by an officer of the government clothed with authority to hear and determine; but it may be impeached in *387 equity, for fraud, in a direct proceeding for the purpose. Johnson, v. Townsley, Gibson v. Chouteau, 13 Wall. 72, 92 Shepley v. Cowan, 91 U. S. 330; French v. Fyan, 93 U. S. 169, 172; Marquez v. Frisbie, Vance v. Burbank, 101 U. S. 473, 514; Quimby v. Conlan, 104 U. S. 420, 426; Steel v. Smelting Co., 106 U. S. 447; Baldwin v. Stark, 107 U. S. 463. So it is as to patents for inventions. Mowry v. Whitney, 14 Wall. 434; cf. Walker on Patents, § 322. The proceedings of the secretary of state, in incorporating a company under the act of 1852, are conclusive against collateral attack. The State v. Taylor, 25 Ohio St. 279. So is the certificate of the probate judge, containing a record of naturalization. Spratt v. Spratt, 4 Peters, 393; McCarty v. Marsh, 5 N. Y. 263; Exp. Wingard, 1 West. L. M. 453, s. c., 4 Week. L. Gaz. 169. The record of the probate court appointing a guardian is, in all collateral proceedings, conclusively presumed to be correct. Shroyer v. Richmond, 16 Ohio St. 455. So is a recognizance taken by a justice of the peace. The State v. Daily, 14 Ohio, 91. And in this state and others, contrary to the rule in England and some of the states (Kerr on Eraud, 1 Am. ed. 293) it is well settled that as between the parties, a judgment cannot be impeached for fraud in a collateral suit or proceeding. Anderson v. Anderson, 8 Ohio, 109; The State v. Daily, supra; Richards v. Skiff, 8 Ohio St. 586; Bong v. Mulford, 17 Ohio, 484; Coates v. Chillicothe Bank, 23 Ohio St. 415; Conway v. Duncan, 28 Ohio St. 102; Christmas v. Russell, 5 Wall. 290; Maxwell v. Smith, 22 Wall. 77; Smith v. Smith, 22 Iowa, 516; Boston & W. R. Co. v. Sparhawk, 1 Allen, 448; McRae v. Mattoon, 13 Rich. 53; Vanmeter v. Jones, 2 Green Ch. 520; Kelley v. Mize, 3 Sneed, 59; Hefferman v. Porter, 6 Cold. 391; Kirby v. Fitzgerald, 31 N. Y. 417; Hammond v. Wilder, 25 Vt., 342; R. v. Grundon, 1 Cowp. 315; 4 Am. L. R. (N. S.) 534.
The remarks of Coke, Hale, Hawkins and Blaekstone as to the right to impeach pardons for fraud are chiefly abstracts or digests of 27 Ed. 3 and other statutes referred to in 8 Am. L. Reg. N. S. 513, 577; but Coke expressly says, what others have ■ repeated, that “ either suppressio veri *388 or expressio falsi doth avoid the pardon.” 3 Inst. 238; 17 Yin. Ab. 43; 2 Hawk. P. C. (Curwood’s ed.) 533; 4 Bl. Com. 400. The same thing, however, is said of the king’s grant of a manor or an office (17 Yin. Ab. 98, 100); and, indeed, it is said, in general terms, with respect alike to charters, patents, grants and judgments, that anything obtained by fraud is void, and that “ covin doth suffocate the right.” But the truth is, the word void is used in different senses, and is “frequently construed to mean voidable.” (Bigel v. Starbuck, 34 Ohio St. 280, 285.) “ When the term (void) is used in reference to the solemn judgments and acts of the superior courts, it means no more than voidable. The judgment or proceeding may be avoided, but until this is done in the direct and regular course of revision, they stand.” Denn v. Lecony, Coxe, 112. “It is said that fraud vitiates all contracts, and even records, which is doubtless true in a general sense. But it must bo reached in some regular and authoritative mode; and this may depend upon the forum in which it is presented, and also upon the parties to the litigation. A record of a judgment may be avoided for fraud, but not between the parties or, privies in a court of law.” Hartshorn v. Day, 19 Howard, U. S. 211, 223. “ This use of the term void is not uncommon in the language’of statutes and courts,” Somers v. Brewer, 2 Pick. 184, 191. In that sense it was employed by the judge delivering the opinion in Work v. Gorrington, 34 Ohio St. 64, 75, in the remark, arguendo, that “pardons obtained by fraud are held to be void;” and in the same sense, and no other, it was used by Coke in the sentence quoted. It means, simply, that a pardon obtained by fraud is void, when in a proceeding authorized by law, before a court having jurisdiction for the purpose, with ample opportunity to the person holding the pardon to defend, such pardon is declared to be void. By 27 Ed. 3, and other statutes, such inquiry was permitted, but there is no such statute in Ohio. Even a deed of gift executed and acknowledged by one having legal capacity to convey, cannot be avoided at law by proof that it was obtained by undue influence, the only remedy being in equity. Truman v. Lore, 14 Ohio St. 144.
*389 To sustain the answer in this case is to justify the impeachment of a full, unconditional pardon in a collateral proceeding, which is summary in its nature. No case, I think, can be found in opposition to this statement. Exp. Shaw, 7 Ohio St. 81; Exp. Bushnell, 9 Ohio St. 77; Exp. Strong, 21 Ohio St. 610; Exp. Van Hagan, 25 Ohio St. 426; Exp. Kearney, 7 Wheat. 431; Exp. Parks, 93 U. S. 18; Exp. Carll, 106 U. S. 521; The State v. Towle, 42 N. H. 540; The State v. Shattuck, 45 N. H. 205; Exp. Bird, 19 Cal. 130; Exp. McCullough, 35 Cal. 97; Com. v. Becky, 1 Watts, 66; s. c., 26 Am. Dec. 37, 49, note; People v. McLeod, 1 Hill, N. Y. 397; s. c., 37 Am. Dec. 328, 366, note; Hurd on Ilab. Cor. (2 ed.) 328; Freeman on Jndgt. § 619 et seq. In denying any such inquiry in a case of this sort, these authorities are especially applicable to this state, where every judge, save only the police judge, has as much jurisdiction and power in habeas corpus as this court possesses when in regular session.
It is urged, to be'sure, that the state has not deprived Enapp of the habeas corpus. True, it has kept the word of promise guaranteed in the constitution; it has granted the writ; but now it is proposed, on behalf of the warden, to employ the writ, not for the purpose of releasing from a seizure which was manifestly unlawful, but for the purpose of legalizing the unlawful arrest, by a judgment declaring the pardon to be void on account of the alleged fraud, and thereby destroying all hope of release. But it is claimed by the warden that pardons form an exception to the rule that an instrument of that class cannot be attacked collaterally. In support of the claim he places reliance not only upon the text books already noticed, but on Com. v. Halloway, 44 Pa. St. 210; Dominick v. Bowdoin, 44 Ga. 357; The State v. McIntire, 1 Jones L. 1; and The State v. Leak, 5 Ind. 359. In Com. v. Halloway the court was unanimous in holding that the pardon had never been delivered, and hence that there was no pardon. The further opinion was expressed, that if there had been a pardon it would have been void, the recommendations which were the sole ground for granting it, having been forged. Doubt, which seems to have been well founded (3 Binney, 599, 611), *390 was expressed, as already stated, whether the stat. 27 Ed. 3 was in force in Pennsylvania ; but the judge delivering the opinion said the court had authority, independently of the statute, to inquire into the validity of the pardon, the principles of the common law having “ a rather wider extent than the provisions of this statute.” No authority is cited in the opinion, nor does the judge enter into any examination of the question whether the common law is as stated, and all that appears upon the subject is comprised within a page of the opinion. He says that the question should be raised by the attorney general, the executive’s law officer, “ for it would be quite indecent that any other person should raise it, unless under some carefully prepared statutory regulationand that it “ may be raised by scire facias to repeal the charter; but' it may also be raised on habeas corpus issued to allow the prisoner to plead his pardon ; for the commonwealth is a party to that proceeding, and the attorney general may appear and answer the plea, by showing the false suggestions on which the pardon was obtained.” This mode of raising the question by habeas corpus must, however, depend on some statutory provision which has never found a place among our laws. In this state the writ can only issue at the instance of the person deprived of his liberty, or on the application of some person acting in good faith in his behalf, and for the sole purpose of releasing him from unlawful restraint; nor would any other use of the writ be anything else than a palpable violation of the constitution by which the writ is guaranteed; and with us to assert that the pardon may be impeached by sci/re facias is to affirm that it is matter of record of such nature as not to admit of collateral attack by habeas corpus. The question whether a pardon may be collaterally impeached was, perhaps, not put at rest in Pennsylvania by Com. v. Halloway. Hester v. Com., 85 Pa. St. 139, 154. But in Dominick v. Bowdoin the court probably meant to follow Com. v. Holloway, though Com. v. Ahl, 43 Pa. St., is cited, which does not support the proposition, but is rather against it. The State v. Mclntire is placed on the ground that it appeared from the record and the pardon that the governor was deceived; but *391 tlie court disclaim the power to look beyond the record and pardon (2 Am. L. Reg. N. S. 488). The State v. Leak follows State v. McIntire.
The decisions referred to were made by courts for which we have the utmost respect. Perhaps when regard is had to the points actually decided, the difference between this court and those courts with respect to organization and powers, and the forms in which the question was presented, it will be found there is no irreconcilable conflict in the cases. However that may be, wo are unwilling to sanction a principle which will authorize this court or any other in the state to impeach a pardon in this summary way.
But while the view we have stated is in our opinion impregnable, there is even higher and more satisfactory ground upon which we should deny the power to impeach this pardon, than by regarding the form of the instrument evidencing the executive will, or the form of the remedy by which such expression of will may be. questioned. We have seen that the governor has no power to revoke the pardon. 26 Ark. 74 ; 66 Mo. 266; 3 Ben. 316; 1 Bond, 574. Nor has the legislature any such power. When the king “ does pardon under the great seal, it has the full effect of the parliament pardon ” (Holt, C. J., in 13 How. St. Tr. 186); and “ the legislature cannot change the effect of such a pardon any more than the executive can change a law.” U. S. v. Klein, 13 Wall. 128, 148; Loan Association v. Topeka, 20 Wall. 655, 663. Nor have the courts tho unlimited power claimed for them. On the contrary, any attempt of the courts to interfere with the governor in the exercise of the pardoning power, would be manifest usurpation of authority. The nature of our government forbids it. The long contest as to the rightful authority of government is in some respects ended. In our national and state constitutions the powers of the three branches of government, the legislative, the executive, -and the judicial, are clearly defined and limited, and the important truth is at length understood, that each can best preserve the jurisdiction and power confided to it, by carefully abstaining from all interference with the rightful authority of the others. “Our *392 government is one whose powers have been carefully apportioned between three distinct departments, which emanate alike from the people, have their powers alike limited and defined by the constitution, are of equal dignity, and within their respective spheres of action equally independent. One makes the laws, another applies the laws in contested cases, while the third must see that the laws are executed. This division is accepted as a necessity in all free governments, and the very apportionment of power to one department is understood to be a prohibition of its exercise by either of the others. The executive is forbidden to exercise judicial power by the same implication which forbids the courts to take upon themselves his duties.” Sutherland v. The Governor, 29 Mich. 320, 324. While this was said in a case which is in conflict with a decision of this court, there was no conflict as to the view thus expressed. The same eminent judge says : “ Where complete power to pardon is conferred upon the executive, it may be doubted if the legislature can impose restrictions under the name of rules or regulations.” Provisions “must not be such as, under pretense of regulation, divest the executive of, or preclude his exercising, any of 1ns constitutional prerogatives or powers. Those matters which the constitution specially confides to him, the legislature cannot directly or indirectly take from his control. . . . The executive in the proper discharge of his duties, under the constitution, is as independent of the courts as he is of the legislature.” Cooley’s Con. L. (5th ed.) 138.'
The correct view is, that as the constitution has vested the pardoning power in the governor, and clothed him with exclusive authority to hear and determine, the only limitations which have been or can be made on the power are found in the constitution itself. No doubt it is competent for the general assembly to legislate in aid of the power, by providing with respect to the limitations on the exercise of the power; and doubtless there might be a valid enactment providing how a pardon obtained by fraud may, with the concurrence of the executive, bo avoided for fraud, for that would be in aid of the power; but legislation of the latter character, if ever *393 thought to be necessary, should be limited to provisions conferring on some court or judge competent to receive the jurisdiction, power to aid the governor in avoiding a pardon for some atrocious fraud, such, for instance, as that disclosed iii Com. v. Holloway, supra, in a direct proceeding for the purpose, with ample opportunity to the accused to be heard, and with power of review in this court. But at present we have no such statute; and to hold that such power exists independently of statute, is not only to decide that it is vested in each of the judges of the state, but that any officer before whom the pardon is set up may go into the question of its validity, and treat it as a nullity. The acts of a commissioner of the land-office, or a commissioner of patents, a secretary of state, probate judge, or even justice of the peace are too sacred to permit such attack. The idea that the most solemn acts of the Chief Executive of the state may be so treated, is not to be tolerated for a moment. To sanction such a course is, besides, in effect, to pronounce against Knapp a sentence of life imprisonment, by reason of the matters set forth in the answer. In denying to this court power to do any such thing, in a proceeding like this, we deny it to every court in the state.
"While fraud should never receive the countenance of any one invested with a public trust, it must be remembered that fraud can only be redressed or remedied by the courts in the cases and in the mode provided by law. It is not true 'that there is a remedy in the courts for every wrong. Take the ease of a conviction obtained by fraud. It is void in the same sense that a pardon obtained by fraud is void ; but, after the term has ended, what remedy has the person so convicted in the courts % He has none whatever. An appeal for executive clemency is the only remedy. Cf. Sanders v. The State, 85 Ind. 318. A decree of divorce obtained by fraud is void in the same sense; but after term there is no power to impeach it or set it aside. Parish v. Parish, 9 Ohio St. 534. Other instances might be cited, if time and space permitted. Nor is this, as has been supposed, any reproach to the law. On the contrary, the law, in such cases, makes a wise choice between acknowledged evils. Besides, the matter here complained of is vague and *394 unsatisfactory. The warden and physician are ordinarily selected from men of experience and judgment, and a physician of ability, as Dr. Gray is conceded to be, could scarcely be deceived in forming the opinion that a prisoner had tubercular deposits in'his right lung, where he had ample time and opportunity to observe and examine such prisoner. True, there is a demurrer to the answer, and a demurrer admits that which is well pleaded; but this court is not bound to say or believe, merely because it is asserted in an answer to which there is a demurrer, that such tubercular deposits, a certificate of the existence of which was the ground of the pardon, were produced by eating “ unwholesome articles.” Remarks pertinent to frauds of that character are made in Whart: Or. PI. & Pr. § 532. In no view of the case is the answer sufficient; but we prefer to place the decision upon the want of power in this court, under the present legislation, to enter upon the proposed inquiry as to the validity of Knapp’s pardon. “ It is far better that he should escape punishment than that a plain principle of law should be set at naught.”
Demurrer sustained February 20, 1883, and prisoner discharged.
Johnson and Longworth, JJ., concurred.