*R. C. Gregory* and *R. Jones*, for the state.

*A. S. White* and *H. W. Chase*, for the defendants.

---

THE STATE *v.* LEAK and Others.

Fraud vitiates a pardon or remission.

When it may reasonably be inferred from the language of a pardon or remis-
sion, considered in connection with the record of the cause in which it was
granted, that the executive was deceived or imposed upon by those procur-
ing it, by false statements or an omission to state relevant facts, the pardon
or remission is void.

*L.* in *March*, 1839, being in prison charged with the crime of murder, was let
to bail by one of the associate judges, upon his executing a recognizance for
2,000 dollars, with sureties, for his appearance, &c. Having failed to appear

Nov. Term,
1854.

THE STATE
v.
LEAK.

and answer to the recognizance, he and his sureties were defaulted. Judgment was afterwards rendered against them upon *scire facias*, and subsequently, in *October*, 1839, the governor remitted to the sureties 1,500 dollars, part of the recognizance, by an instrument reading as follows: "*David Wallace*, governor of the state of *Indiana*. To all who shall see these presents, greeting. Know ye that I hereby remit unto *G. Duignan*" (and the other sureties, naming them) "the sum of fifteen hundred dollars, it being part of the amount of a judgment on forfeiture of recognizance rendered against them at the last term of the *Owen* Circuit [Court], as security for the appearance of, &c. The signature of the governor and seal of the state were annexed, and the instrument was duly attested by the secretary of state. The constitution in force when the instrument of remission was executed, gave the governor "power to remit fines and forfeitures, grant reprieves and pardons, except in cases of impeachments." The instrument not stating the crime for which *L.* was to appear and answer, nor the amount of the judgment upon the forfeiture of the recognizance, *held*, that it must be presumed that the governor was not informed of these facts, and that the recognizance was therefore void.

Wednesday,
November 29.

ERROR to the *Owen* Circuit Court.

PERKINS, J.—Debt by the *State* against *Leak* and others, upon a judgment on a forfeited recognizance. The amount of the judgment was 2,000 dollars.

The defendants pleaded payment, and secondly, as to 1,500 dollars of said judgment, that in *March*, 1839, *William Leak*, one of the defendants, was in prison, charged with the murder of one *James Carter;* that afterwards he was let to bail by one of the associate judges, upon his executing a recognizance, in the sum of 2,000 dollars, with *Duignan*, *Barns*, *Foster*, *Wells*, and *Barns*, sureties for his appearance, &c; that he failed to appear and answer to his recognizance; that he and his sureties were defaulted; that judgment was subsequently rendered against them upon *scire facias*, and that, afterwards, and before the commencement of this suit, *David Wallace*, then the governor of the state of *Indiana*, remitted to the said defendants said sum of 1,500 dollars, part, &c., by a duly executed instrument here copied.

"*David Wallace*, governor of the state of *Indiana*. To all who shall see these presents, greeting. Know ye that I hereby remit unto *G. Duignan*, *Stephen Barns*, *Isaac Barns*, *Ambrose Foster*, and *William Wells*, the sum of fifteen hundred dollars, it being part of the amount of a

judgment on forfeiture of recognizance rendered against them at the last term of the *Owen* Circuit [Court], as security for the appearance of *William Leak*. In testimony whereof I have hereunto set my hand and caused to be affixed the seal of the state, at *Indianapolis*, the 23d day of *October*, in the year of our Lord one thousand eight hundred and thirty-nine, the twenty-third year of the state, and of the independence of the *United States*, the sixty-fourth. *David Wallace*. By the governor. *Wm. J. Brown*, secretary of state."

To this plea the plaintiff replied, that said remission was obtained by fraud, in this, that said *Leak* had been arrested upon a charge of murder; that when he procured the other defendants to become his sureties in the recognizance by which he was let to bail, he fully indemnified them in the whole sum, by conveying to them a large amount of property, with the understanding between them that said *Leak* was to flee the country, and never appear to answer to said charge, which facts were concealed from the governor when he executed the said remission.

General demurrer to this replication sustained, and judgment for the defendants; it being agreed by the parties that 500 dollars of said judgment of 2,000 dollars had been paid.

The constitution of the state, at the time the remission in question was executed, conferred upon the governor the power to grant pardons, &c., in these words:

"He shall have power to remit fines and forfeitures, grant reprieves and pardons, except in cases of impeachments."

The exercise of this important power was not regulated by statute. No mode, no conditions were prescribed. The power itself was adopted from the *British* constitution, and the manner of its exercise not being, in this state, pointed out by statute, we naturally turn to the judicial decisions in *England*, in short, to the common law, for the solution of questions relative to the validity of its exercise in particular cases.

It is well settled in the *British* Courts that fraud vitiates a pardon or remission, and so it is in the *American*. But

how this fraud must appear, is, perhaps, not so clearly determined. It is insisted that it can not be pleaded, and established by extrinsic evidence, that is, evidence not furnished by the record of the suit in which the pardon or remission is granted. This point we shall not examine in deciding the case before us. The authorities and text-books all concur in this: that whenever it may reasonably be inferred from the contents of the pardon or remission itself, considered in connection with the record of the cause in which it was granted, that the executive was deceived or imposed upon by false statements, or an omission to state relevant facts, on the part of those procuring the pardon or remission, the one or the other, as the case may be, is void. 4 Black. Comm. 400.—*Coke*, in his 3d Inst., 238, says, "And that party which informeth not the king truly, is not worthy of his grace and forgiveness, and therefore either *suppressio veri* or *expressio falsi* doth avoid the pardon."

*Chitty*, in his Criminal Law, vol. 1, p. 770, lays it down, that "in order to render a pardon valid, it must express with sufficient accuracy the crime it is intended to forgive;" and on page 771 he says, "it is also a general rule that wherever it may reasonably be intended that the king, when he granted the pardon, was not fully apprised of the heinousness of the offence, and how far the defendant stood committed on the record, the pardon is altogether void."

In regard to the remission under consideration, we think it may "reasonably be intended," from the vagueness and uncertainty of its statements, that the governor, when he granted it, was not fully apprised of the facts of the case. The remission does not state the crime which the recognizance required an appearance to answer to, nor does it state the amount of the judgment, 1,500 dollars of which it remits. Now, we think it may be fairly inferred that the governor was not advised of these facts. Had he known that *Leak* was recognized upon a charge of murder, and that the judgment on the recognizance was for but 2,000 dollars, it can scarcely be possible that he would have remitted three-fourths of that judgment, leaving but 500

dollars to be paid by bail upon a recognizance for so hein-
ous a crime.

A late case in the Supreme Court of *North-Carolina*,
*The State* v. *McIntyre*, fully sustains the view we have
taken. In that case the defendants were convicted of an
assault and battery, and sentenced to imprisonment. They
applied to the Supreme Court, and, while the cause was
pending there, applied to the governor and obtained a par-
don. The pardon, after reciting the facts of the conviction,
sentence, &c., reads thus: "I do, by these presents, pardon
the said *James* and *David McIntyre* the offence whereof
they stand convicted, remitting so much of said judgment
as extends to imprisonment," &c. The pardon does not
recite the fact that an appeal had been taken in the cause
to the Supreme Court, but simply speaks of the defend-
ants as standing convicted, and it was held, that from this
circumstance it might reasonably be intended that the gov-
ernor was not informed of such appeal; it was asserted
that he should have been, as the information might, per-
haps, have influenced his action in the premises; and it
was held, that as, by inference, he was not so informed,
the pardon was void.

Pardons and remissions are in derogation of the law,
and should never be extended except in cases which, could
the law have foreseen, it would have excepted from its
operation; yet the heedlessness with which they had been
granted had become a serious evil. Our new constitution,
article 5, section 17, attempted to provide for some check
upon this abuse; but the most effective corrective will be
found in the strict application to those acts of executive
grace of the rules of law by the Courts.

We think the remission under consideration void, the
plea setting it up bad, and that, hence, on the demurrer,
the judgment should have been for the plaintiff.

*Per Curiam.*—The judgment is reversed with costs.
Cause remanded, &c.

*J. S. Watts*, for the state.

*J. M. Hanna*, *H. Secrest*, and *W. A. Gorman*, for the de-
fendant.