KELLEY *v.* STATE OF INDIANA.
[No. 25,907.   Filed April 28, 1933.]

*Fitzpatrick & Fitzpatrick, John T. Walterhouse, Thomas V. Miller, Ed. V. Fitzpatrick* and *William D. Fitzpatrick*, for appellant.

*James M. Ogden*, Attorney-General, and *Earl B. Stroup*, Deputy Attorney-General, for the State.

FANSLER, J.—The appellant was indicted in two counts. The first charges that he forged a certain check. The second that he passed a fraudulent check and that he was an habitual criminal. The jury returned verdicts finding the appellant guilty upon both counts. Upon the habitual criminal charge their verdict is as follows:

"And we further find that the said Thomas Jacob Kelley, alias J. W. R. Petri, alias Alexander P. Pousep, alias James Cameron, alias James Ross Petri, on the 17th day of October, 1916, was convicted in the Circuit Court of Delaware County, in the State of Indiana, for the crime of False Pretense and was sentenced to the Indiana Reformatory, a penal institution for a term of not less than one nor more than seven years; and that the said Thomas Jacob Kelley, alias James Ross Cameron, alias C. E. Harris, on the 20th day of December, 1919, was convicted in the United States District

Court for the State of Michigan for the crime of conspiracy and was sentenced to the Federal Penitentiary at Leavenworth, Kansas, a penal institution; and that the said Thomas Jacob Kelley, alias James Ross Petri, was on the 12th day of December, 1922, convicted in the County of Bronx, in the State of New York, for the crime of Grand Larceny and that he was sentenced to the State's Prison at Sing Sing, a penal institution in the State of New York, to serve two years and six months."

There was judgment sentencing him to the Indiana State Prison for two to fourteen years under the forgery count, from one to five years on the fraudulent check count, and for life as an habitual criminal.

The sections of the statute concerning habitual criminals are as follows:

"2339 (Burns 1926). 1. Every person who, after having been twice convicted, sentenced and imprisoned in some penal institution for felony, whether committed heretofore or hereafter, and whether committed in this state or elsewhere within the limits of the United States of America, shall be convicted in any circuit or criminal court in this state for a felony hereafter committed, shall be deemed and taken to be an habitual criminal, and he or she shall be sentenced to imprisonment in the state prison for and during his or her life."

"2340 (Burns 1926). 2. To authorize a sentence of imprisonment for life under this act, the indictment or affidavit shall allege that the defendant has been previously twice convicted, sentenced and imprisoned in some penal institution for felonies, describing each separately. If the trial jury, in their verdict, find these facts to be true, and convict such defendant of the third felony, the trial court after passing sentence of imprisonment for a specific term, as prescribed by the statute, shall proceed to sentence the defendant to imprisonment for his or her life."

To authorize a life sentence, the previous convictions, sentences and imprisonments must be described specifically, and the jury must find that

the defendant was convicted, sentenced and imprisoned in the instances described, and not otherwise.

This legislative intent is clear and was evidently understood by the state when the indictment was drawn. The verdict of the jury follows the exact language of the habitual criminal portion of the indictment.

The state sought to prove the prior convictions by certified transcripts of the respective judgments, which was proper if the defendant was identified as the person against whom the judgments were had.

Exhibit No. 5 is a certified transcript of a judgment of the Delaware Circuit Court of Indiana in the case of the *State of Indiana* v. *Alexander Pousep.* The indictment is not included in the exhibit, and the judgment does not describe the crime for which he was convicted, but merely recites:

> "It is therefore considered, adjudged and decreed by the court that the said defendant, Alexander Pousep, Jr. for the offense by him committed be and he is hereby committed to the custody of the Board of Trustees of the Indiana Reformatory, to be confined by them according to law for a period of not less than one year nor more than seven years."

There was no other competent evidence upon the subject, and the exhibit wholly fails to show that Alexander Pousep was convicted of the crime of false pretense as alleged in the indictment.

Exhibit No. 7 is a certified copy of a judgment and indictment of the District Court of the United States for the Eastern District of Michigan, Southern Division, against James Ross Cameron, alias C. E. Harris, and Clarence T. Strom. The indictment is in three counts, charging larceny, forgery and the uttering and publishing of counterfeit money. The defendants entered a plea of guilty and were sentenced for the crimes charged in the indictment. There was no other evi-

dence of any other or different conviction in said court. The exhibit wholly fails to show a conviction for conspiracy, as alleged in the indictment and found in the verdict

Exhibit No. 8 is a certified transcript of an indictment in three counts returned in the Supreme Court of the County of Bronx, in the State of New York, against James Ross Petrie, charging grand larceny in the second degree. The transcript does not contain a copy of any judgment that may have been entered. There is a memorandum on the back of the indictment in these words: "Dec. 12th, 1922. Sentenced to State Prison for not less than 1 year 6 months, nor more than 4 years 6 months. L. D. G., County Judge." And another, in these words: "Dec. 12th, 1922. Sentenced to State's Prison for 2 Yrs. & 6 Mos. L. D. G., County Judge." Who placed the memoranda on the back of the indictment is not shown, nor is there any reference to any judgment roll or judgment record.

Even if it be conceded that Exhibit No. 8 sufficiently shows a judgment of conviction of grand larceny, Exhibits Nos. 5 and 7 do not show convictions of false pretense and conspiracy as found in the verdict, and there is proof of only one of the convictions charged where two are necessary to sustain the verdict and authorize judgment of life imprisonment.

And, in addition to this failure of evidence, there was a complete failure to identify the appellant as the defendant referred to in the various judgments. Certain photographs were admitted in evidence upon testimony of a Bertillon expert that they were photographs of the appellant, but there was no evidence that they were photographs of the Alexander Pousep convicted in the Delaware Circuit Court, or of the James Ross Cameron, alias C. E. Harris, convicted in the United States District Court, or of the James

Ross Petrie convicted in the State of New York. It is true that each of the photographs bore one of the names referred to, together with printed statements describing the subject as a criminal; and witnesses testified that the photographs were obtained from the Indiana Reformatory at Pendleton, the police department of New York City, and a detective magazine, respectively. Who provided the names and the information on the photographs, and the source of the information, is not shown. It may be that this information came from the same source as the information upon which the indictment was drawn. This evidently was to the effect that the conviction in the district court was for conspiracy, which was incorrect and unreliable. At most it was hearsay, unsworn to. These photograph exhibits furnish no legal evidence that the appellant was the same person referred to in the judgments. The attorney-general concedes that these exhibits would be hearsay standing alone and without explanatory evidence, but contends that the witness, John Gaughn, a police officer, testified to admissions made to him by the appellant which identifies him as the defendant against whom the three judgments were had. If this were true it would not help the exhibits or cure the error. Certain of Gaughn's testimony is set out in the brief. We have examined this testimony, and the entire testimony of the witness, as shown by the record, and find no evidence of any such admission. The evidence shows that appellant denied having gone by or being known under the names referred to. He did admit that he had been convicted in a federal court and served time in Leavenworth, and that he had been convicted in New York State and had served time there. This is not sufficient.

We cannot say that all of this incompetent evidence did not affect the jury in its determination of the guilt

or innocence of the defendant in the principal cases on trial.

The Alexander Pousep referred to in the judgment of the Delaware Circuit Court was pardoned. This pardon was introduced in evidence by the appellant. It is contended by the appellee that "the pardon itself is sufficient evidence of his conviction in the Delaware Circuit Court and his serving the sentence." The pardon is evidence that Alexander Pousep was convicted and pardoned. It is not evidence that the appellant is Alexander Pousep. The appellant objected to the admission of the record of the judgment for the reason that he had not been identified as the person involved. He offered the pardon in evidence upon the theory that the pardon wiped out the conviction. It was introduced upon the assumption that the court's ruling on the admissibility of the record of the judgment was correct, and in an effort to avoid its effect. If the record had not been admitted without first identifying him as the judgment defendant, he would have had no occasion to introduce the pardon. We cannot see that it has the effect of identifying him.

All of these matters are assigned as grounds for a new trial. The motion should have been sustained.

A prosecution which may result in life imprisonment is of the highest importance and should be prepared with care sufficient at least to avoid such obvious difficulties as we have discussed above.

Appellant's motion to quash the indictment was overruled.

The statute, §2946 Burns 1926, makes it a crime to make or utter or publish as true a forged instrument. "The rule in this state and elsewhere is that when a statute makes it a crime to do any one of several things mentioned disjunctively, all of which are punished alike, the whole may be charged

conjunctively in a single count without objection for duplicity." *State* v. *Schipper* (1923), 193 Ind. 595, 141 N. E. 330; *Selby* v. *State* (1903), 161 Ind. 667, 69 N. E. 463.

The body of the first count of the indictment, omitting the copy of the check, is as follows: "The Grand Jurors for the County of Marion and State of Indiana, upon their oaths present that Thomas Jacob Kelley on or about the 16th day of August, A. D. 1925, at and in the County of Marion and State aforesaid, did then and there unlawfully and feloniously, falsely and fraudulently make, forge and counterfeit a certain check purporting to have been made and executed by one G. B. Parsons to Thomas J. Kelley, Jr., for the payment of a sum of money, to-wit: Ninety-four Dollars and Sixty-five Cents ($94.65), to the said Thomas J. Kelley, which said false, forged and counterfeit check is of the following tenor, viz.: . . . with intent then and there and thereby feloniously, falsely and fraudulently to defraud Washington Hotel Co. (a corporation), he the said Thomas Jacob Kelley then and there well knowing the indorsement on said check to be false, forged and counterfeit, then and there being contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana."

Apparently there was an effort to charge both the forgery and the uttering of the forged instrument, but there is no allegation that the instrument was uttered or published; hence, the words "he the said Thomas Jacob Kelley then and there well knowing the indorsement on said check to be false, forged and counterfeit, then and there being" must be considered as surplusage. The statute declares against making a forged instrument with intent to defraud any person. It is alleged that the appellant forged the check in question

with intent to defraud the Washington Hotel Co., a corporation. The hotel company is not named or referred to in the check. It might be inferred from the opinions in *Shinn* v. *State* (1877), 57 Ind. 144, and *Yount* v. *State* (1878), 64 Ind. 443, that the person intended to be defrauded must be connected with or named in the forged instrument.

In *State* v. *Simpson* (1906), 166 Ind. 211, 76 N. E. 544, 76 N. E. 1005, this court sought to distinguish these cases so as to avoid the inference referred to.

There are early cases which hold that an indictment for making a forged instrument with intent generally to defraud will be sufficient, but that where intent to defraud a particular person is alleged the state will be held to proof of the averment. *Wilkinson* v. *State* (1858), 10 Ind. 372; *Colvin* v. *State* (1858), 11 Ind. 361.

In view of the language of the statute and the decisions referred to we must hold that the person intended to be defrauded, as alleged in the indictment, need not be connected with or referred to in the forged instrument. The first count of the indictment is good as a charge of making a forged instrument. The second count is not questioned.

By instruction No. 1 the appellant asked that the jury be charged that, in order to justify a verdict of guilty,

they must believe beyond a reasonable doubt that there was not, in fact, any such person as G. B. Parsons (the name signed to the check), and that at the time of the uttering of the check in question the defendant knew there was no such person as G. B. Parsons. As pointed out, there was no charge of uttering a forged instrument, and, as to the forging of the instrument, it was immaterial whether or not there was such a person as G. B. Parsons if, in fact, the defendant forged that name to the instrument. The instruction was properly refused.

By the second instruction the appellant asked that the jury be instructed that "before the defendant can be found guilty under the first count of the indictment that the state must establish by the evidence beyond a reasonable doubt that the endorsement on said check at the time of delivery was false and that the defendant was not the person to whom said check was made payable." The check was payable to defendant and endorsed with his signature. The genuineness of the endorsement is immaterial if the name of the maker was forged by the defendant.

The appellant questions the constitutionality of the Habitual Criminal Act on the ground that it places the defendant in jeopardy twice for the same offense; that it authorizes punishments for crimes alleged to have been committed in other jurisdictions; that it provides for the infliction of cruel and unusual punishment; that it is not based on principles of reformation; that it is an ex post facto law authorizing punishment for crimes committed prior to the passage of the act; and that it does not recognize any limitation of the time for prosecution.

The statute does not impose an additional penalty on crimes for which the defendant had been already convicted. It simply imposes a heavier penalty for the commission of a felony by one who had been previously twice convicted and imprisoned for the commission of a felony. The punishment is for the new crime only. The punishment is more severe because the defendant is an habitual criminal, and it is within the discretion of the legislature to treat imprisonment in another jurisdiction as evidence of the fact of habitual criminality. It is not unconstitutional. *Goodman* v. *Daly, Warden* (1929), 201 Ind. 332, 165 N. E. 906; *Carlesi* v. *People of the State of New York* (1913), 233 U. S. 51; *State* v. *Edelstein* (1927), 262 Pac. (Wash.) 622.

The appellant tendered an instruction to the effect that the state was required to prove beyond a reasonable doubt that, under the laws of the State of New York, the crime of grand larceny in the second degree is a felony. The instruction was properly refused. If two of the three prior convictions were proven as alleged, proof of the New York conviction was not essential. The statute provides that one who has been twice convicted "for felony" shall be taken to be an habitual criminal. Section 2027 Burns 1926 provides that "All crimes and public offenses which may be punished with death or imprisonment in the state prison shall be denominated felonies." We must interpret the word "felony" in the Habitual Criminal Statute in the light of that definition.

The word felony no longer has its common-law meaning, but what may be a felony in one jurisdiction may not be in another, and in some jurisdictions crime may not be classified at all. 16 C. J. 55.

We construe the statute to mean that when the charge is based upon crimes committed in other jurisdictions it is sufficient to prove that the conviction was for an offense "which may be punished with death or imprisonment in the state prison" in the jurisdiction where the conviction was had.

The appellant tendered the following instruction: "The court instructs the jury that it is the law that a pardon issued by proper authority reaches both the punishment for the offense and the guilt of the offender; and when the pardon is issued without conditions it releases the punishment and blots out the existence of guilt so that in the eye of the law the offender is as innocent as if he had never committed the offense and if you find from the evidence that a pardon was given for one of the offenses as set forth in the indictment, such offense and any conviction, sen-

tence and imprisonment thereunder shall in no way be considered by you against the defendant."

The appellant excepted to the court's refusal to give the instruction, and thus presents here for the first time a question concerning which courts of last resort in other jurisdictions have announced views so conflicting as to seem irreconcilable.

Mr. Justice Field, speaking for the majority of the United States Supreme Court in *Ex parte Garland,* 4 Wall. 333 (18 L. Ed. 366), said:

> "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity."

This interpretation of the common law seems to be accepted by all of the authorities as correctly defining the effect of a pardon. The difficulty lies in the question, can a judgment of conviction for which a pardon has issued be proven under the Habitual Criminal Act without diminishing the force and effect of the pardon?

One of the leading cases holding to the affirmative view is *Herndon* v. *Commonwealth* (1898), 105 Ky. 197, 48 S. W. 989. Judge Hobson, speaking for the court, said:

> "It is also insisted that appellant is not liable for the increased penalty imposed by the statute on a third conviction of felony by reason of the fact that he was pardoned by the Governor of the crime of which he was first convicted, and an instruction to this effect was asked and refused on the trial. This question was presented to this court in the case of

*Mount* v. *Com.*, 2 Duv. 93, where it was held that the pardon had not this effect. The court said: 'The pardon relieved the convict of the entire penalty incurred by the offense pardoned, and nothing else or more. It neither did nor could relieve from any penal consequence resulting from a different offense, committed after the pardon, and never pardoned. The increased punishment prescribed by the statute for the subsequent offense was no part of the penal consequences of the first offense, but applied exclusively to the last, as aggravated by its repetition of the same crime. The Legislature, as required by justice and policy, ought to have provided a severer punishment for repeated than for only one crime; and whether it had done so, by duplicating for a second offense the punishment of the first, or by any other measure of augmentation, cannot be material. In any aspect the augmented punishment is for the last, and not at all for the first, offense; and, of course, a pardon of the first could in no way or degree operate as a pardon of the last offense, or remission of any portion of the punishment denounced for the perpetration of it.' This case was afterwards followed in *Stewart* v. *Com.*, 2 Ky. Law Rep. 386, and it seems to us that the circuit court ruled properly in refusing the instruction asked."

The courts of New York and Washington have taken the same view, treating the Kentucky case as a leading case on the subject. *State* v. *Edelstein, supra; People ex rel. Malstrom* v. *Kaiser, Warden* (1929), 236 N. Y. S. 619.

A thorough and exhaustive discussion of the question from this viewpoint is to be found in *State* v. *Edelstein, supra.*

The courts of Ohio, Virginia, Pennsylvania, Louisiana and Texas take the contrary view. *Scrivnor* v. *State* (1928), (Tex.) 20 S. W. (2d) 416; *State* v. *Lee* (1931), 132 So. (La.) 219; *Edwards* v. *Commonwealth* (1883), 78 Va. 39; *State* v. *Martin* (1898), (Ohio) 52 N. E. 188; *Deihl* v. *Rogers* (1895), 169 Pa. 316, 32 Atl. 424.

Perhaps the most exhaustive discussion from this viewpoint is to be found in the two opinions in *Scrivnor* v. *State, supra.*

Mr. Bishop, long recognized authority on criminal law, says in Bishop's New Criminal Law (1892), §919:

"If a second offence is made by statute more heavily punishable than the first, and the first is pardoned, it is obliterated. It follows that a like offence afterward committed is punishable only as a first offence. We have a case wherein this reasoning was overlooked, and the contrary was held; the court observing that the pardon 'neither did nor could relieve from any penal consequence resulting from a different offence, committed after the pardon, and never pardoned.' True, but the pardon by annulling the one offence prevented the other from being the second."

The case referred to in the subquotation is *Mount* v. *Commonwealth* (1865), 63 Ky. 93, cited in the Kentucky case above quoted from.

Bishop's Criminal Law, 9th Edition, §963 (1923), does not agree with the earlier edition quoted above. The text of the later edition seems to have influenced the opinion, and is quoted from, in *State* v. *Edelstein, supra,* as follows:

"It has been held in Ohio that a pardon obliterates an offense and that hence the conviction in regard to which it is granted is not a former conviction within the habitual criminal act. This reasoning is very technical. A person who has received clemency but instead of reforming persists in his evil ways certainly should not as to a subsequent offense be treated better than if the pardon had been denied. Accordingly the Kentucky court has held that such a pardon does not relieve him from any penal consequences resulting from his subsequent offenses, and this reasoning has been adopted by the United States Supreme Court."

It is said in *Scrivnor* v. *State, supra,* where these two sections are compared, that the language of the

earlier edition is the language of Mr. Bishop, while the later edition was edited by others.

As authority for the proposition that the reasoning of the Kentucky court, referred to in the last quotation, has been adopted by the United States Supreme Court, the case of *Carlesi* v. *People of the State of New York, supra,* is cited, but an examination of that case, as pointed out in *Scrivnor* v. *State, supra,* does not support the conclusion of the text writer. Mr. Chief Justice White, speaking for the court, said:

> "As the state courts held that the statute directed the consideration of the prior conviction despite the pardon, we must treat the case as if the statute so expressly commanded and test its repugnancy to the Constitution of the United States upon that assumption."

And the Supreme Court of Texas says:

> "It thus appears that the extent of the holding in said case is that when there is a statute making a former pardoned conviction usable in a subsequent case for the purpose of enhancing the punishment, this is not a violation of the rights of the accused." *Scrivnor* v. *State, supra.*

No other reason appears for departing from the doctrine laid down in the former edition of Bishop, except the language:

> "This reasoning is very technical. A person who has received clemency but instead of reforming persists in his evil ways, certainly should not as to a subsequent offence, be treated better than if the pardon had been denied."

We cannot see that the reasoning referred to is technical, nor can we see that the issuing of a pardon necessarily or ever contemplates that it will be followed by a reformation. Pardons are issued to correct past injustice, as where after discovered facts convince the executive that there was no guilt in the first instance,

or to correct other mistakes, or where a course of conduct or of public service, since conviction and before pardon, convinces the executive that the crime has been expiated and the need for further punishment or stigma has been removed, or where there are extenuating circumstances; and, indeed, it is noticed that some offenses which come within our statutory definition of felony, involve no moral turpitude or criminality in its true sense in the first instance.

It seems to us that the true rule must be based upon the constitutional intention as to the effect of pardons, and the legislative intention in enacting the habitual criminal act.

The constitution of this state vests in the executive power to grant full pardons. Perkins, J., speaking for this court, in *State* v. *Leak et al.* (1854), 5 Ind. 359, said:

> "The power itself was adopted from the British constitution, and the manner of its exercise not being, in this state, pointed out by statute, we naturally turn to the judicial decisions in England, in short, to the common law, for the solution of questions relative to the validity of its exercise in particular cases."

And we as naturally turn to the common law to determine the constitutional intention as to the force and effect of a pardon. The effect of a full pardon at common law, as defined by Mr. Justice Field and quoted above, was well known at the time, and we must interpret the constitutional grant of power as conforming to that definition.

At the first session of the legislature after the adoption of the constitution, in the first section of the first chapter of the statutes of Indiana, the common law of England is declared to be part of the law of this state.

The legislature must be deemed to have had in mind the effect of a pardon as defined above when they en-

acted the habitual criminal statute. The legislative purpose is evident; as is said in *State, ex rel. Edelstein* v. *Huneke*, 244 Pac. 721:

"The hearing upon the habitual criminal charge is merely for the purpose of determining what manner of man the defendant is."

Did the legislature intend that one convicted and pardoned should, under this law, stand exactly as if he had not been pardoned? Did it intend to place in the same category a convicted and unpardoned felon and one "as innocent as if he had never committed the offense?"

Penal statutes are strictly construed. *State* v. *Cleveland, etc., Ry. Co.* (1894), 137 Ind. 75, 36 N. E. 713; *State* v. *Pence* (1909), 173 Ind. 99, 89 N. E. 488; *Kistler* v. *State* (1921), 190 Ind. 149, 129 N. E. 625.

"Another fact to be considered is that the statute, which, as a penal enactment, cannot receive an equitable construction, is subject to be limited, so far as the meaning of its words are in doubt, by the fact that it is in derogation of the common law. 'The general rule in exposition of all acts of parliament is this, that in all doubtful matters, and where the expression is in general terms, they (the words) are to receive such a construction as may be agreeable to the rules of the common law, in cases of that nature; for statutes are not presumed to make any alteration in the common law, further or otherwise than the act does expressly declare.'" *State* v. *Lowry* (1905) and *Lewis* v. *State* (1905), 166 Ind. 372, 77 N. E. 728.

Some states have expressly included convictions that have been pardoned, among those that may be proven under their habitual criminal act, and in some instances the constitutionality of their so doing has been questioned. In view of the force and effect of a pardon under the common law and, therefore, under the law of this state, knowledge and understanding of which must be imputed to the legislature at the time the statute was

enacted, we must construe their failure to expressly include pardoned convictions in the act as evidencing an intention that they should not be counted.

For the errors indicated the judgment is reversed, with instructions to sustain the appellant's motion for a new trial.

The clerk of this court will issue the proper order for the return of the prisoner to the custody of the sheriff of Marion County.