James Paul DUNCAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1278S287.

Supreme Court of Indiana.

Sept. 12, 1980.

Bruce A. Dumas, Valparaiso, for appellant.

Theodore L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury of two (2) felonies: Conspiracy to Commit a Felony, Ind.Code § 35–1–111–1 (Burns 1975) [hereinafter referred to as "Conspiracy,"] and Possession of Burglar Tools by a Convicted Felon, Ind.Code § 35–13–8–1 (Burns 1975) (repealed 1976 Ind.Acts, Pub.L.No.148, § 4, effective October 1, 1977) [hereinafter referred to as "Possession."] The defendant was also found to be an Habitual Criminal under Ind.Code § 35–8–8–1 (Burns 1975) and was sentenced to life imprisonment upon each of the aforementioned convictions. His direct appeal presents the following issues:

(1) Whether the trial court erred in denying the defendant's motion for severance of the Conspiracy and Possession charges.

(2) Whether the Indiana statute pertaining to the Possession of Burglar Tools by a Convicted Felon is constitutional.

(3) Whether the trial court erred in admitting evidence of prior criminal conduct.

(4) Whether the trial court erred in admitting certain physical evidence.

(5) Whether the trial court erred in admitting certain documentary evidence.

(6) Whether the convictions for Conspiracy and Possession as well as the determinations of Habitual Criminality were supported by the evidence.

(7) Whether the trial court erred in allowing the jury to consider multiple Habitual Criminality counts and in sentencing the defendant thereon to two (2) terms of life imprisonment.

(8) Whether the sentences imposed upon the defendant constituted cruel and unusual punishment.

## ISSUE I

The defendant contends that the trial court erred in denying his motion to sever, for trial purposes, the "Conspiracy" and "Possession" charges. The claim is that severance was necessary in order "to promote a fair determination of the defendant's guilt or innocence [as to] each crime."

Ind.Code § 35–3.1–1–11(a) (Burns 1975). Whether or not charges are severed for trial generally lies within the trial court's discretion; thus, clear error must be demonstrated if we are to interfere with the exercise of that discretion. Essentially, the defendant's argument is two–fold: first, that because an element of "Possession" was a prior felony conviction, and because the prior conviction in this case was of Burglary, the jury, upon hearing evidence of the prior conviction, could likely have inferred propensities to engage in burglaries and enter into agreements to commit them; second, that because an element of "Possession" was an intent to commit burglary, the jury, upon hearing evidence of an agreement to commit burglary, could likely have inferred an intent to commit burglary. We find the second argument to be without merit, but we are persuaded by the first.

Intent to commit a felony may be inferred from the circumstances surrounding an incident. *Bonner v. State*, (1979) Ind., 392 N.E.2d 1169; *Young v. State*, (1971) 257 Ind. 173, 273 N.E.2d 285. In this case, the defendant and an accomplice (Marvin) were arrested, at night, outside a drugstore. A police officer had observed them on the roof of the drugstore, prying open a vent. Some tools and a gym bag were found in the vicinity of the drugstore soon after the arrests. From these circumstances, the jury could reasonably infer an intent to commit burglary, regardless of any evidence of an agreement to commit burglary.

We are confronted by an altogether different situation in reference to evidence of a prior felony conviction and its effect upon the "Conspiracy" conviction. The defendant correctly states that proof of the "Possession" charge required proof of a prior felony conviction. *See* Ind.Code § 35–13–8–1 (Burns 1975). However, it was not required with respect to the "Conspiracy" charge, and there is a high probability that its presence impacted prejudicially and unnecessarily upon such charge.

In *Lawrence v. State*, (1972) 259 Ind. 306, 314–15, 286 N.E.2d 830, 835–36, we held

that fundamental fairness mandates a bifurcated trial in Habitual Criminal proceedings. Bifurcation is necessary in order to "prevent the jury from becoming unduly influenced by the introduction of evidence of prior crimes." *Id.* at 314, 286 N.E.2d at 835. We find the reasoning in *Lawrence* applicable to the case at bar.

Here, the defendant was charged with "Conspiracy" and "Possession" and the trial court denied a timely motion to sever the two (2) charges for trial. In consequence, the jury unnecessarily heard evidence of a prior felony conviction during the trial of the principal charges. Although the evidence was competent with respect to the "Possession" charge, it was irrelevant with respect to the "Conspiracy" charge. Its potential for prejudice is self-evident. *Lawrence,* 259 Ind. at 310, 286 N.E.2d at 833 (citing *Rowe v. State,* (1968) 250 Ind. 547, 237 N.E.2d 576).

The trial court's refusal to sever the "Conspiracy" and "Possession" charges was error having a substantial potential for harm. Accordingly, we reverse the judgment upon the "Conspiracy" count.

### ISSUE II

■ The defendant contends that the Indiana statute defining the crime of "Possession" is unconstitutional. The statute provides:

> If any person previously convicted of a felony be found having in his possession any burglar tools or implements with intent to commit the crime of burglary, such person shall be deemed guilty of a felony, and on conviction thereof shall be imprisoned not less than two [2] years nor more than fourteen [14] years, and the possession of such tools or implements shall be prima facie evidence of the intent to commit burglary. Ind.Code § 35–13–8–1 (Burns 1975) (repealed 1976 Ind.Acts, Pub.L.No.148, § 4, effective Oct. 1, 1977).

Specifically, the defendant claims that the statute is "void for vagueness," and that it unreasonably classifies convicted felons. We find this assignment to be without merit.

While it is true that the Legislative scheme contains no enumerated definition of "burglar tools," it is equally true that a definition of "burglary" is provided, to–wit:

> Whoever *breaks and enters into* any boat, wharf–boat, or other water–craft, interurban car, street–car, railroad–car, [automobile], an attached or unattached trailer, semitrailer or camper; or airplane, or other aircraft, or *any building or structure other than a dwelling house or place of human habitation, with the intent to commit a felony therein,* shall be guilty of burglary in the second degree, and upon conviction shall be imprisoned not less than two [2] years nor more than five [5] years and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period: Provided, however, That the court shall have power to suspend prison sentence and place the defendant on probation in accordance with existing law. Ind.Code § 35–13–4–4(b) (Burns 1975) (emphasis added).

Thus, "burglar tools," as applicable to this case, are those tools which facilitate the breaking and entering into any vehicle or structure hereinbefore mentioned. Moreover, the possession of such tools is not necessarily in and of itself prohibited: it is possession coupled with an intent to commit the crime of burglary. *See Steinbarger v. State,* (1948) 226 Ind. 598, 82 N.E.2d 519.

■ We also hold that the Legislature reasonably differentiated between felons and nonfelons in defining the crime of "Possession." It is rational for the State to keep burglar tools out of the possession of convicted felons.

Finally, in *Goldstine v. State,* (1955) 234 Ind. 388, 126 N.E.2d 581, we upheld the "Possession" statute from an identical constitutional challenge. We perceive no valid reason to deviate from that holding at this time and decline to do so.

### ISSUE III

■ The defendant next assigns error to the trial court's ruling that evidence of

prior criminal conduct by the defendant was admissible. The State's principal witness against the defendant was Jeffrey Marvin, an accomplice of the defendant during the events at bar. Marvin testified, over objection, that he and the defendant had burglarized another drugstore, at night, one (1) week prior to the incident at issue. Marvin further testified that entrance on that occasion was effected through the roof. The crime now before us was executed in a manner nearly identical to the prior burglary: attempted burglary of a drugstore, at night, through the roof. Hence, the evidence was admissible under the "common scheme or plan" exception to the general rule that prior criminal conduct is inadmissible. *See Biggerstaff v. State,* (1977) 266 Ind. 148, 361 N.E.2d 895; *Manuel v. State,* (1977) 267 Ind. 436, 370 N.E.2d 904. No error has been presented.

### ISSUE IV

The defendant next assigns error to the trial court's ruling that a drill brace, gym bag and screwdriver were admissible in evidence. Specifically, the defendant urges that the items were not sufficiently connected to him and that, in any event, no complete chain of custody was established. We do not agree.

As to the first contention, there was substantial evidence of probative value adduced at trial that the admitted items were, in fact, the same as, or sufficiently similar to, the items found at the scene of the crime. Because the items were found at the scene of the crime and because the defendant was arrested at the scene, a sufficient connection was established.

As to the second contention, we note that "[The] items were all hard physical evidence whose characteristics were capable of eyewitness identification, unlike the fungible narcotics involved in *Graham v. State,* (1970) 253 Ind. 525, 255 N.E.2d 652. It is a sufficient foundation for the introduction of such items into evidence that a witness identify the items and it has relevance to the issues of the case." *Woodard v. State,* (1977) 267 Ind. 19, 24, 366 N.E.2d 1160. (Citation omitted).

Thus, the admissibility of the items in this case did not hinge upon a showing of an exhaustive chain of custody. Rather, the identification testimony of accomplice–Marvin and Chief Deputy Rogers was sufficient. Again, no error has been presented.

### ISSUE V

The defendant next assigns error to the admission of certain documentary evidence. Exhibits Numbers Ten (10) and Eleven (11) were admitted during the trial of the principal charges and were offered to establish the defendant's prior felony conviction, an element of "Possession." Exhibit Number Ten (10) contains certified documents pertaining to the defendant's conviction of Burglary in the Second Degree, said conviction having been rendered by the District Court of Custer County, Oklahoma, on January 22, 1973. Although certification was not contested at trial, the defendant did then contend that the documents were insufficient, in themselves, to connect him to the 1973 conviction. Thereupon, the State offered Exhibit Number Eleven (11)—certified documents pertaining to the defendant's record at the Oklahoma State Penitentiary. The defendant objected upon the grounds that the prison record was irrelevant and prejudicial.

The defendant is correct in stating that it was incumbent upon the State to demonstrate that he was, in fact, the person convicted of the prior felony. A mere document, relating to a conviction of one with the same name as the defendant would have been insufficient. *See Kelley v. State,* (1933) 204 Ind. 612, 185 N.E. 453. Exhibit Number Eleven (11) served to discharge the State's obligation, inasmuch as it contained, *inter alia,* a prison photograph of the defendant. When the exhibit is so viewed, we find the trial court to have been well–within the wide latitude it enjoys when ruling upon the relevancy of evidence. *See Williams v. State,* (1979) Ind., 387 N.E.2d 1317; *Barnes v. State,* (1975) 263 Ind. 320, 330 N.E.2d 743.

We are confronted by a similar situation with regard to Exhibit Numbers Twelve (12) and Thirteen (13), which were admitted during the Habitual Criminal portion of the proceedings. Exhibit Number Twelve (12) contains certified documents pertaining to the defendant's conviction of Interstate Transportation of Stolen Property, said conviction having been rendered by the United States District Court for the Northern District of Indiana on July 26, 1972. Again, although certification was not contested, the defendant contended that the documents were not sufficient, in themselves, to connect him to the 1972 conviction. The State subsequently offered Exhibit Number Thirteen (13)—certified documents pertaining to the defendant's record at the United States Penitentiary in Terre Haute, containing, *inter alia*, fingerprints of the defendant. For the reasons hereinbefore announced, we hold that Exhibit Number Thirteen (13) was relevant as tending to identify the defendant as the person named in the 1972 conviction record. Moreover, the Exhibit was necessary under Ind.Code §§ 35-8-8-1, 35-8-8-2 (Burns 1975) to demonstrate that the defendant had been imprisoned in a penal institution for the commission of a felony.

Defendant also questions that a proper foundation was laid for the introduction of these exhibits. This argument appears to be predicated upon the failure of the State to establish the chain of custody of the exhibits, presumably from the time they were certified in accordance with the statute pertaining to the admission of copies of public records, Ind.Code § 34-1-17-7 (Burns 1973), and the time they were offered into evidence. A mere possibility of tampering will not render evidence inadmissible. *Starkey v. State*, (1977) 266 Ind. 184, 361 N.E.2d 902, *Kolb v. State*, (1972) 258 Ind. 469, 282 N.E.2d 541; and the rule requiring that the chain of custody of certain evidence be established applies with diminishing strictness as the evidence becomes decreasingly susceptible to alteration, tampering or substitution. *Coleman v. State*, (1975) 264 Ind. 64, 339 N.E.2d 51. We are aware of no instance where the requirement has been imposed as to certified copies of public records, and we perceive of no justification for such a requirement.

## ISSUE VI

The defendant next challenges the sufficiency of the evidence. He first contends that the evidence was insufficient to support the "Conspiracy" conviction because the State failed to prove that the object of the conspiracy was a felony. Having hitherto determined that the "Conspiracy" conviction cannot stand, we will not address this issue.

Secondly, the defendant contends that for three reasons the evidence was insufficient to sustain the "Possession" conviction: 1) that the State did not prove Second Degree Burglary to be a felony, 2) that the State did not prove the drill brace, screwdriver and gym bag to be burglar tools, and 3) that the State did not prove a connection between the above items and the defendant. We have resolved the latter two (2) contentions earlier in this opinion in a manner adverse to the defendant's position, *see* Issues Number II and IV, *supra*, and will not belabor them here.

As to whether or not the State proved Second Degree Burglary was a felony in Oklahoma at the time it was committed, we have held in the past that when a charge is based upon a crime committed in another jurisdiction, we will deem the crime a felony if it is punishable by imprisonment in a state prison. *Kelley v. State*, (1933) 204 Ind. 612, 185 N.E. 453. *See* Ind.Code § 35-1-1-1 (Burns 1975). Exhibits Numbers Ten (10) and Eleven (11) clearly demonstrate that Burglary in the Second Degree was so punishable in Oklahoma.

Finally, the defendant contends that the evidence was insufficient to support the Habitual Criminal finding because the State did not prove the 1972 and 1973 convictions were, in fact, of the defendant. Essentially, the defendant's claim is identical to that discussed in Issue Number V, *supra*, in reference to the admissibility of

the documentary evidence. Having determined that issue against the defendant's position, we need not further address it.

## ISSUE VII

In view of our holding upon Issue I, this issue is moot.

## ISSUE VIII

The defendant's final assignment of error pertains to the imposition of a life sentence under the circumstances in this case. He argues that an Habitual Criminal life sentence for the crimes of Interstate Transportation of Stolen Property, Second Degree Burglary and "Possession" is disproportionate to the severity of those crimes and therefore, cruel and unusual. We do not agree.

In essence, the defendant's contention is identical to those advanced and rejected in *Norris v. State*, (1979) Ind., 394 N.E.2d 144 and *McMahan v. State*, (1978) Ind., 382 N.E.2d 154. We there stated, and here affirm, the rule that a sentence imposed pursuant to a proper Habitual Criminal finding is neither disproportionate, nor cruel and unusual.

For the reasons herein announced, the judgment of the trial court upon the "Conspiracy" count is reversed and the life sentence thereon, as an habitual offender, is ordered vacated. In all other respects, the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., concurs in part and dissents in part with opinion.

PIVARNIK, Justice, concurring in part and dissenting in part.

I would dissent from the majority opinion in Issue I in this cause wherein it is determined that the trial court's refusal to separate the conspiracy and possession charges was error having a substantial potential for harm.

I agree with the majority that whether or not charges should be severed for trial lies within the trial court's discretion and that, therefore, clear error must be demonstrated if we are to interfere with the exercise of that discretion. This is consistent with the statutory provision of Ind.Code § 35–3.1–1–11(a) (Burns 1975) and also with our case law on the subject.

In *Spencer v. Texas*, (1967) 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, the United States Supreme Court held that a 14th Amendment due process claim does not arise under circumstances such as this, where the jury hears two different charges, one of which requires the proof of a previous felony conviction. *Spencer* involved a habitual criminal statute in which the defendant was charged with a crime and, in an additional count, charged with being a habitual criminal. The habitual criminal charge required, of course, the proof of prior felony convictions. The Supreme Court found in *Spencer* that there was no constitutional violation involved, although the Court did suggest that this is an area warranting extreme caution, and that the states would be well–advised to adopt procedures such as bifurcated submissions to the jury that would remove the problems of prejudice to the jury in regard to the charge that did not require the showing of a previous conviction. This Court requires such a bifurcation in habitual criminal proceedings. *Lawrence v. State*, (1972) 259 Ind. 306, 314, 315, 286 N.E.2d 830, 835, 836.

The question here is whether the court abused its discretion by refusing to sever the two charges appellant faced in this particular case under the facts and circumstances presented. Here, Duncan, and his accomplice (Marvin) were observed attempting to make an entry into the roof of the drugstore. Several police officers observed them for some time from different angles and were able to testify about their bringing with them the burglary tools, climbing onto the roof and prying open the air conditioner vent to gain entry into the building. They were arrested at the scene before they could make their escape and before they could complete the burglary. Accomplice Marvin also testified to all of

this, and confirmed that their purpose was to gain entry through the roof in order to commit a burglary in the drugstore. He further testified that he and Duncan had committed a burglary in a drugstore in Rensselaer, Indiana, about a week prior to this incident, in which they had obtained entry by drilling through the roof, such as they had done here. The accomplice's testimony concerning the crime in Rensselaer was admissible, because of the nature of admissible evidence in a conspiracy charge, and the rule of evidence that permits admission of a prior crime where it shows motive, intent, identity, or a common scheme or plan.

The question is then, in the face of all of this evidence against the defendant in this case, whether the trial court abused its discretion by allowing the jury to hear that he had previously been convicted of burglary in Oklahoma. There is no claim here that the jury was not properly instructed to use that conviction only for the purpose of finding a necessary element in the possession of burglary tools charge, rather than evidence of guilt of the burglary charge. We have never said there is *no* time when a previous conviction cannot be shown to a jury. It is only when the showing of that conviction would so prejudice the jury over and above the considerations for justifying its showing that it would be reversible error. *Spencer v. Texas, supra*, said that, and *Drew v. United States*, 331 F.2d 85, (D.C. Cir. 1964), relied on by the appellant, said that. The Circuit Court of Appeals for the District of Columbia reversed the trial court for refusing to sever in the *Drew* case because it found that two separate and unrelated charges were joined and tried by the jury. That case involved a robbery and an attempted robbery that occurred on different days in different places. The *Drew* court noted that such a joinder might be justified in certain cases, but found that it was not justified for appellant *Drew* because the record showed a confusion of the facts as they related to each of the crimes charged, and a tendency for the State on final argument to bunch together all of the facts that would tend to have the jury find the de-

fendant guilty of both charges if they were convinced by the evidence that he was guilty of one of them.

We should reverse a trial judge's discretionary ruling only if we find the exercise of his discretion was clear error. Under the facts and circumstances in this case, it is apparent no such appraisal can be made and therefore I do not see that we are justified in reversing the trial judge and ordering a new trial. *Tewell v. State*, (1976) 264 Ind. 88, 399 N.E.2d 792; *Frith v. State*, (1975) 263 Ind. 100, 325 N.E.2d 186. I concur with the majority on all other issues.